LOTTINGER, Judge.
This is a suit under the Louisiana Workmen’s Compensation Act for death benefits, medical and burial expenses, as well as penalties and attorney fees. The petitioner is Mrs. Odile Griffin, widow of Eddie R. Pierce and the defendant is Phoenix Insurance Company. The Lower Court granted a judgment in favor of petitioner and against defendant, and the defendant has taken this appeal.
Eddie R. Pierce, a man of 58 years of age, was in the employ of the Lafourche Parish Police Jury at a salary of $200.00 per month on and prior to August 4, 1965. Phoenix Insurance Company is the Workmen’s Compensation Insurance Carrier of the Lafourche Parish Police Jury.
While so employed in the capacity of a pump operator, but actually working on a barge which was used by the Police Jury to maintain the levees in the area of Delta Farms, Mr. Pierce, in lifting a heavy plank about ten to twelve feet long by twelve inches wide by two inches thick and weighing sixty pounds, struck his back against a cable attached to a dragline, which was aboard the barge. Upon so striking his back, Mr. Pierce fell to the deck of the barge and complained of immediate pain. Although the accident occurred at approximately 10:00 o’clock A.M., he worked until *74 2:00 o’clock P.M., when he was required to quit working because of the pain and discomfort he sustained.
On the same afternoon Mr. Pierce went to see his physician, Dr. John A. Fisher, in Cut Off, Louisiana, and was examined and treated by his said doctor. He remained under the treatment of Dr. Fisher for a period of approximately seven weeks when, due to improvement in his condition, he was advised to return to light work. Although he did return to light work, in attempting to step over a pipe, it was noticed that his left leg was weak and he had difficulty in lifting that limb. After working for only about one-half a day, he was again forced to cease working and returned to Dr. Fisher.
Dr. Fisher referred Mr. Pierce to Dr. O. L. Pollingue, an orthopedic surgeon in New Orleans, Louisiana, who treated Mr. Pierce for a period of four weeks. After said period of treatment, Dr. Pollingue was of the opinion that the patient had overcome the original back injuries, • however, he was giving complaints which indicated he had suffered a stroke, and Dr. Pol-lingue referred him back to Dr. Fisher for further treatment.
Upon his return to Dr. Fisher, a spinal tap was performed on the patient which, in the opinion of Dr. Fisher, was within normal limits. However, because of complaints of numbness and weakness of the left leg, Mr. Pierce was referred to Dr. Jose L. Garcia Oiler, a neurosurgeon in New Orleans, who suggested that a diagnostic operation be performed. The surgery was performed on November IS, 1965, and it manifested a brain tumor astrocytro-ma class, Grade two to three. Because of the size and malignancy of the tumor, only a part of the tumor was removed and the operative site closed up. Following the operation, Mr. Pierce showed some improvement and, as there was no further treatment to be administered in the hospital, he was returned home for further care. He deteriorated until he expired on December 23, 1965, while in the Lady of the Sea Hospital in Galliano, Louisiana. The cause of his death was diagnosed as pneumonia brought about by the brain tumor.
The Lower Court first rendered a judgment in favor of petitioner and against defendant, as aforesaid. Subsequent thereto, defendant filed a motion for a new trial on the grounds that the deposition of certain medical witnesses taken by joint stipulation and agreement had not been filed into the records, through an oversight, and consequently they were not considered by the Lower Court in arriving at its decision. No opposition having been made by petitioner, a new trial was granted and the additional testimony was submitted, after which judgment was again rendered in favor of petitioner and against defendant. Defendant has taken this appeal.
Dr. John A. Fisher, the treating physician and a general practitioner, testified by deposition to the effect that his experience in brain tumors was extremely limited insofar as therapy is concerned and the only opinion he gave was based on the written opinion received by him from Dr. Oiler. He did testify that the back trauma did not cause the brain tumor and later stated that there were no objective findings to substantiate his opinion that the alleged injury may have and probably did aggravate the decedent’s tumor. Dr. Fisher had no individual opinion as to whether or not the tumor was aggravated by the accident.
Dr. Oiler, a neurosurgeon, to whom the decedent was referred by his treating physician, testified that the basic cause of the death was a brain tumor which produced a chain of events that eventually caused death. He emphatically testified that the accident did not cause the tumor and that the tumor preexisted the accident, however, the blow to the spine may have aggravated the tumor and may have precipitated a chain of events that resulted in having cerebral pressure and swelling to a degree that the symptoms became apparent sooner and that the condition progressed more *75 rapidly. To secure such a result the blow would have had to be a severe or sharp one. Although Dr. Oiler testified that the blow to the back would have had to have been a severe or sharp one in order to aggravate the tumor, Mrs. Pierce testified that there were no marks apparent on her husband’s back after the accident, and her treating physician testified that the decedent had only a small bruise-like affair on his back following the accident.
The testimony of Dr. Oiler was to the effect that the blow could cause a rise in the spinal pressure, thus causing a shift of the tumor mass which in turn could cause brain swelling, which in time would cause the aggravation of the symptoms. He stated that there is a reasonable medical probability that the blqw probably caused the aggravation. He, however, had no objective symptoms to sustain his position.
Dr. O. L. Pollingue, an orthopedic surgeon to whom decedent was referred by his treating physician, agreed that the injury would not have caused the brain tumor. He testified, that as an orthopedic surgeon, he does not feel that this type of injury would have aggravated a brain tumor, but indicated that this is more properly the field for a neurosurgeon and not an orthopedic surgeon.
Dr. Howard H. Karr, a neurosurgeon, was called as an expert witness by defendant. Although he did not see or treat the deceased, he did examine all the medical records and reports of the other treating and examining physicians. He testified emphatically that the alleged accident neither caused the brain tumor nor aggravated the brain tumor. Although he testified that there have been cases where a brain tumor has been aggravated by trauma, the trauma would either have to be to the head area, or the trauma would have had to be of such severity as to cause a fracture. He stated that in such cases the symptoms would necessarily have appeared immediately, within a matter of seconds, minutes or at least a few hours.
Dr. Richard W. Levy, a neurosurgeon, testified that although he never saw the patient, he examined all the medical reports and hospital records available on the deceased. It was also his firm opinion that the “low back injury of August 4, 1965, neither caused nor aggravated the brain tumor from which this man subsequently died.” He further testified, similar to Dr. Karr, that although trauma could not cause a brain tumor, certain types of trauma could aggravate a brain tumor. This aggravation, however, would be noticed immediately. By immediately he means from seconds to minutes up to one hour following the accident. Dr. Levy testified that the patient did not have increased intercranial pressure at the time of his injury, nor for several weeks thereafter. If any momentary increase in pressure exerted an ill effect on a brain tumor, then there would be a lasting increase in intercranial pressure because once the tumor shifted in relation to the brain as a result of the presumed strain, it would not shift back and this would become a permanent shift and the intercranial pressure would stay up. He testified that according to the records before him, the alleged strain or trauma failed to produce a shift or movement of the tumor up until the time of the spinal tap taken by Dr. Fisher. This spinal tap was administered by Dr. Fisher several weeks after the accident, and the results showed the pressure to be within normal limits.
Thus, we here have the situation where Dr. Jose L. Garcia Oiler testified that he had no objective evidence upon which to base his findings. He did testify, however, that there was a reasonable medical probability that the blow probably caused the aggravation.
Drs. Levy and Karr, on the other hand, were definite and positive in their testimony that the accident neither caused nor aggravated the brain tumor. Dr. Fisher, the treating physician, states that his opinion was based solely upon that of Dr. Oiler. Dr. Pollingue, a treating orthopedist, testi *76 fied that it was his opinion that this accident did not aggravate the pre-existing brain tumor, however, the decision was in the field of a neurosurgeon and not an orthopedist.
In its decision in favor of petitioner, the Lower Court said:
“Plaintiff in his’brief has submitted to us the case of Adams vs. Home Indemnity Company [La.App.], 180 So.2d 51. While the Adams vs. Home Indemnity Company case found for the defendant in a situation which is comparable to the case at bar, there is, in our opinion, one big difference in the Adams case and our case. In the Adams case the decedent was not a previously healthy, hard-working individual prior to the accident in which he was involved. In the case at bar, as we have already stated, the decedent appeared to be enjoying normal health. The dissenting opinion in the Adams case appeals to this Court, and we believe that in the Adams case the judgment would have been for plaintiff had his physical and health condition compared with the plaintiff in the case at bar, prior to this accident.”
It is true that in the Adams case the petitioner w'as diabetic and had a vascular condition prior to the accident in question. Notwithstanding, the Court held there was no causal connection between the accident and the disability. Here the medical testimony shows that the brain tumor pre-exist-ing the accident. The only question is whether the accident aggravated the tumor resulting in death.
The jurisprudence is well settled in this State to the effect that “speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient to support a judgment.” Guillory v. New Amsterdam Casualty Company, 244 La. 225, 152 So.2d 1.
In Bernard v. Louisiana Wildlife and Fisheries Commission, La.App., 152 So.2d 114, the Court said:
“The established jurisprudence of this State is to the effect that in a compensation case, as in other cases, plaintiff bears the burden of proof, and he is required to establish his claim with reasonable certainty by a preponderance of the evidence. * * * however, a claimant does not have to prove causal connection to an absolute certainty; it is sufficient that he establish the cause of his injuries by a reasonable probability.”
The majority of opinion in the Adams case contains the following language:
“Under all of the circumstances we do not think the facts here warrant a presumption of causal connection between the accident and the disability. This is not a situation where there is no other reasonable explanation but that the accident caused, activated or accelerated the disability. There is a very reasonable explanation, unconnected with the accident. Plaintiff was not in good health before the accident, nor did he even have a merely dormant disease. He had an active, rapidly progressing disease in which there was no substantial change soon after the accident. We think it is much more probable than not, that there was no causal connection between the accident and the plaintiff’s disability.”
In the dissenting opinion, Judge Tate said:
“To prove by a preponderance of the evidence requires only proof that is more probable than not, not proof beyond a reasonable doubt. * * * What is only a medical possibility may, in the light of the entire evidence, become a legal probability, sufficient to satisfy the burden of proof under the commonsense principle established by our jurisprudence in the light of the inexactitude or indefiniteness of medical knowledge as to medical causation. A medical condition producing disability or death is presumed to have resulted from an accident, if before the accident the injured person was in good health or affected only with la *77 tent symptoms, but shortly after the accident the disabling or death-causing condition manifested itself; provided that the medical evidence shows that there is a reasonable possibility of a causal connection between the accident and the disability or death.”
In the case before us, we find that there is no question that the decedent was apparently of a healthy condition prior to the accident. He did, however, have an undisclosed brain tumor prior to the accident according to all of the medical evidence. Subsequent to the accident he was examined and treated by his own physician for a period of some seven weeks, after which he improved and was encouraged to return to work. Although he attempted to return to work, he had difficulty with his left leg and returned to his physician, who referred him to Dr. Pollingue. Dr. Pol-lingue treated Mr. Pierce for a period of four weeks after which time it appeared that the decedent had suffered a stroke, and referred him back to Dr. Fisher for further treatment. It was not until some three months after the accident that the brain tumor was discovered.
The only real evidence to show aggravation of the tumor by the accident was the testimony of Dr. Oiler to the effect that there was a “* * * reasonable probability that the blow probably caused the aggravation.”
To the contrary we have the strong and convincing testimony of Dr. Karr and Dr. Levy to the effect that the accident did not cause nor aggravate the tumor. The petitioner has failed to prove her case with the reasonable certainty required, and judgment of the Lower Court will, accordingly, be reversed, and judgment will be rendered in favor of defendant, dismissing petitioner’s suit.
For the reasons hereinabove assigned, the judgment of the Lower Court will be reversed and there will be judgment herein in favor of defendant and against petitioner, dismissing petitioner’s suit at petitioner’s cost.
Judgment reversed.