I,WHIPPLE, Judge.
In this appeal, plaintiff, Linda Mouton, appeals from a judgment of the district court affirming the decertification of her home as a foster home. For the following reasons, we vacate and remand.
FACTS AND PROCEDURAL HISTORY
Plaintiffs home was certified as a foster care facility on June 27, 1983, by the State of Louisiana Department of Social Services, Office of Community Services (hereinafter “OCS”). On January 10, 1994, plaintiff was informed by an OCS child protection investigator that they had received a complaint that M.P., a foster child formerly housed by plaintiff, had been molested by plaintiffs cousin who often babysat for children in plaintiffs home. At the time the complaint was made, plaintiff was housing three other foster children: S.S., age 17, who had been in her home for four years; T.R., age 2, who had been in her home since one month of age; and T.W., age 4, who had been in plaintiffs home since she was ten days old. Due to the complaint, on January 26, 1994, these foster children were removed from plaintiffs home.
Thereafter, on February 28, 1994, during a meeting with the OCS child protection investigator and an OCS social services specialist, plaintiff was informed of allegations that two other former foster *487 children, D.V. and S.P., had also been molested while residing in her home.[1]
The OCS concluded that these complaints were valid and notified plaintiff by letter dated April 25, 1994, that her home would be closed effective May 10, 1994. Plaintiff then sought administrative review within the Department of Social Services.
1 aAccording to the testimony elicited before the Administrative Law Judge on November 21, 1994, M.P., one of the former foster children involved in the complaint, came to plaintiffs home as an infant and remained there for approximately five months. She was returned to plaintiffs home at the age of two years and remained there until December of 1991, when she reached four years of age. D.V., another former foster child involved in the complaint, was brought to plaintiffs home at the age of two and remained there until May or June of 1989, when she reached four years of age. The third former foster child involved in the complaint, S.P., came to plaintiffs home at the age of two and remained until September of 1990, when she reached six years of age. When departing from placement in plaintiffs home, each of the three former foster children had left plaintiffs home within seven to ten days after receiving a physical examination that made no mention of sexual abuse or molestation and rated each child’s general health as “good.”
Plaintiffs cousin, the alleged perpetrator, was questioned by the sheriffs office, but was never arrested or prosecuted for any crime. Also, no action was taken by OCS to remove plaintiffs two biological daughters, who continued to reside with her in the home, despite OCS’s stated “validation” of a complaint alleging the molestation of the three named foster children.
At the hearing, in response to questions concerning “the validation of the complaint,” the OCS Home Development Unit employees responsible for the certification and decertification of foster homes admitted that they could not provide any specific information or details concerning the complaint. Also, they could not furnish any details surrounding the investigation of the matter, other than the fact that a complaint had been determined by the OCS Child Protection Investigation Unit to be “valid.” When questioned, the witnesses stated that any information concerning the complaint and any subsequent OCS investigation |4would be contained in the OCS Child Protection Unit’s Investigation Report, which is confidential.
Counsel for plaintiff continuously objected, challenging the OCS witnesses’ failure or refusal to disclose the requested information concerning the basis for the alleged “validated complaint.” As shown in the following colloquy, the OCS Home Development Unit witnesses candidly admitted that they had no evidence to present concerning the investigation or evidence used by the OCS Child Protection Investigation Unit to validate this claim:
Mr. Robideaux:[2] So they don’t have any evidence, or ... the evidence they have is not to be divulged as to the date?
Ms. Broussard:[3] What I have does not indicate dates.
*488 Mr. Robideaux: Do you have any evidence as to what sexual abuse [that] occurred to these children happened in the Mouton home?
Ms. Broussard: I don’t have anything. ..
Mr. Robideaux: Do you have any information that this happened in the Mouton home, physically in the home itself?
Ms. Broussard: I’m not aware of that.
After taking the matter under advisement, the Administrative Law Judge rendered an opinion in favor of the State of Louisiana, Department of Social Services, based upon a finding that the Office of Community Services had correctly decerti-fied plaintiffs home. Plaintiff filed a petition for judicial review by the district court, pursuant to LSA-R.S. 49:964. The matter was heard on November 22, 1999, and by judgment signed December 7, 1999, the district court [ ¡¡affirmed the decertification.
Plaintiff appeals, alleging in a single assignment of error that the district court erred in affirming the decision of the State of Louisiana Department of Social Services.
DISCUSSION
The right to judicial review of final decisions in adjudication proceedings is set forth in LSA-R.S. 49:964 A. The standard of review to be applied by the reviewing court is set forth in subsection G as follows:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
(7) In cases covered by R.S. 15:1171 through 1177, manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be *489 given to the agency’s determination of credibility issues. (Emphasis added.)
|fiWhen reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Further, an aggrieved party may obtain review of any final judgment of the district court by appeal to the appropriate court of appeal. On review .of the district court’s judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. See LSA-Const. art. 5, § 5(C); Mayo v. Municipal Police Board of Review, 98-1864, p. 6 (La.App. 1st Cir.l 1/5/99), 745 So.2d 188, 191; Richer v. Louisiana State Police, Riverboat Gaming Enforcement Division, 97-0121, p. 5, n. 5 (La.App. 1st Cir.2/20/98), 710 So.2d 799, 803 n. 5, writ denied, 98-0780 (La.5/8/98), 719 So.2d 51.
In challenging the Department’s decision to decertify her home, and the procedures which ultimately resulted in the district court affirming the ALJ’s decision to uphold the Department’s actions, plaintiff cites Harris v. State, Department of Social Services, 93-1365 (La.App. 1st Cir.12/22/94), 648 So.2d 449. In Harris, a foster home was decertified after the state received, investigated and “validated” a complaint against the foster mother. The administrative hearing officer found the decertification proper, but the district court concluded that the removal of the children and the decertification procedure had violated the foster mother’s constitutional rights. On appeal by the Department, this court affirmed the district court, because no competent evidence had been presented in the decertification proceeding to substantiate the charges against the foster mother and the resulting- agency action (decertification). As noted therein:
Hearsay evidence is admissible at administrative hearings, but it is well settled that hearsay evidence is not competent evidence, and it is competent evidence that proves the case. State witnesses refused to divulge evidence on the basis of the confidentiality rule of La.R.S. 46:56. We do not take issue with La.R.S. 46:56; however, to prove its case, the State cannot rely totally on hearsay evidence which it cannot be compelled to divulge pursuant to La. R.S. 46:56. When faced with [7this kind of a dilemma, the state must independently develop direct evidence which can be used to prove its case. We are, however, not called upon to decide in this case whether this type of evidence can be divulged and is admissible, nor do we suggest how this type of evidence is to be developed.
Harris v. State Dept. of Social Services, 93-1365, at p. 3, 648 So.2d at 450.
In Spreadbury v. State Department of Public Safety, 99-0233 (La.App. 1st Cir.11/5/99), 745 So.2d 1204, however, this court more recently applied a somewhat more relaxed evidentiary standard in an administrative hearing appeal as established by the Supreme Court in Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375.[4] The Court in Chaisson concluded that in order for hearsay evidence to qualify as “competent evidence,” the evidence must have “some degree of reliability and trustworthiness” and be “the type that reasonable persons *490 would rely upon.” The Court further held “that this determination must be made on a case-by-case basis under the particular facts and circumstances.” Chaisson, 97-1225 at pp. 12-13, 708 So.2d at 382.
The Department contends that in order to maintain the decertification of Ms. Mouton’s home, it was only required to prove that a “validated complaint” of child abuse/neglect had been made and that established departmental procedures were followed in decertifying Ms. Mouton’s home.
Although the Home Development Unit may have followed the internal policies and procedures used by the Department for decertification, these internal policies and procedures do not relieve the state of the evidentiary burden required by law in such proceedings. Here, as in Hams, the state’s witnesses, by their own admission, had no direct knowledge and could present no competent evidence to establish the basis for the decertification. The only evidence presented by the state |swas the hearsay testimony of the OCS Home Development Unit employees that they had received information that workers from the OCS Child Protection Investigation Unit had “validated” a reported complaint of abuse. As required by Harris, the state must present some competent, direct evidence in order to meet its evidentiary burden of proof. Even applying the more relaxed evidentiary standards recently established in Chaisson, the absence of evidence by state witnesses to support or establish the basis for the decision to decertify makes it impossible to determine the degree of reliability or trustworthiness of such hearsay statements, and precludes any determination whether the hearsay evidence qualifies as “competent evidence.” Considering the applicable law and the jurisprudence that this court is bound to follow, the state has failed to meet its evidentiary burden.
Clearly, the Department was required to submit competent evidence before the administrative tribunal to satisfy its burden of proof. Instead, the administrative tribunal herein was unable to make any credible determination of reliability of the witnesses whose opinions formed the underlying basis for Ms. Mouton’s decertifi-cation were not called to testify, having invoked the confidentiality provisions of LSA-R.S. 46:56. See LSA-R.S. 49:964G(6).
As this case demonstrates, the conflict, between the administrative procedure statutes and LSA-R.S. 46:56’s confidentiality provision is a serious one which should be addressed by the legislature. However, in accordance with the established principles set forth in Harris and Chaisson, on the record before us, we must conclude reversal of the decision of the district court is required. Given the grave nature of the case, however, and the state’s paramount obligation to protect the interest of the children in its custody, we deem it appropriate to remand the matter to the district court with instructions to allow the administrative tribunal to reopen the record. On remand, the Department (and appellant) should be allowed [ flto submit any additional or competent evidence which may be garnered to support (or controvert) a decision to decertify.
CONCLUSION
For the above and foregoing reasons the December 7, 1999 judgment of the district court affirming the decertification of plaintiffs home as a foster home is vacated and the matter is remanded to the district court, with instructions, for further proceedings consistent with the views expressed herein. In vacating the district court’s judgment, we expressly note that *491 we are not reinstating the certification of plaintiffs home as a foster care facility. Assessment of costs of the appeal is pre-termitted, pending final disposition.
VACATED AND REMANDED, WITH INSTRUCTIONS.
DOWNING, J., concurs in part and dissents in part and assigns reasons.

. The complaint regarding molestation of M.P., D.V., and S.P. was not made until three, four and a half, and four years, respectively, after the children had ceased to reside in plaintiff’s home.

. Mr. Robideaux served as counsel for Ms. Mouton at the hearing.

. Although the transcript incorrectly identifies the witness as “Mr. Broussard” at times, a thorough review of the record indicates that the witness actually called to testify was a *488 "Ms. Broussard," who was employed by the Office of Community Services as a social service specialist.

. While Spreadbury and Chaisson arose from decisions rendered from Department of Public Safety and Corrections and workers' compensation administrative hearings, respectively, we find that the reasoning of the Courts therein applies equally to the instant case. Spreadbury, 99-0233 at p. 9, 745 So.2d at 1209.