944 So.2d 604 (2006)
Louise M. CARPENTER
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HOSPITALS.
No. 2005 CA 1904.
Court of Appeal of Louisiana, First Circuit.
September 20, 2006.
Rehearing Denied October 25, 2006.
*606 Peter J. Losavio, Baton Rouge, Counsel for Plaintiff/Appellee Louise M. Carpenter.
Neal R. Elliot, Jr., Baton Rouge, Counsel for Defendant/Appellant State of Louisiana, Department of Health and Hospitals.
Before: PETTIGREW, DOWNING, and HUGHES, JJ.
HUGHES, J.
This is an appeal by defendant, the Department of Health and Hospitals for the State of Louisiana, from a judgment by the 19th Judicial District Court restoring Medicaid benefits to plaintiff, Louise M. Carpenter. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On February 5, 2004, Louise M. Carpenter, then ninety-two years of age, moved from the home of her daughter Sheryl Bergeron, where Ms. Carpenter had lived since 1989, into a full care nursing home. On March 22, 2004, Ms. Bergeron filed a Medicaid application on her mother's behalf for long-term care benefits through the Department of Health and Hospitals for the State of Louisiana (DHH). The DHH's routine "resource eligibility screening" of Ms. Carpenter's assets detected that $29,339.68, the balance of a Legg Mason brokerage account in Ms. Carpenter's name, had been transferred to Ms. Bergeron at a point close in time to Ms. Carpenter's relocation to the nursing facility and Ms. Bergeron's application for benefits.[1]
The DHH viewed this transaction as a "transfer of resources for less than fair market value." According to the DHH's Medicaid Eligibility Manual, it is presumed that such a transfer has been effected in *607 order for an applicant to enhance his or her eligibility for Medicaid's long-term care benefits. On April 27, 2004, after written notice, the DHH denied Ms. Carpenter's benefits from February 5, 2004 through November 1, 2004. This amount of time represents a pro rata calculation applying an estimated average monthly private pay cost for long-term care of $3,000.00 per month to the $29, 339.68 figure.
Upon Ms. Bergeron's appeal, an administrative hearing was held on July 21, 2004. At the hearing, Ms. Bergeron opposed DHH's position that the transaction represented a transfer of assets for less than fair market value. She sought to show that, pursuant to a written care agreement that she and her mother signed in 1989 when her mother moved in with her, the $29,339.68 represented compensation for Ms. Bergeron's services in caring for her mother for the ensuing fifteen years until her mother required placement in the nursing home. Ms. Bergeron's evidence included the written care agreement, which set out terms by which Ms. Carpenter would pay Ms. Bergeron $1,000.00 per month, due on demand by Ms. Bergeron, in compensation for a wide array of care and services during Ms. Carpenter's residence with her daughter. The agreement is dated March 1, 1989 and signed by Ms. Carpenter and Ms. Bergeron as well as two witnesses. The witnesses to the agreement appeared and testified under oath at the hearing.
After the hearing, the administrative law judge took the matter under advisement and on August 19, 2004 she released her summary of the evidence, findings of fact, and "conclusions and recommendations." The administrative law judge concluded that DHH had properly denied Ms. Carpenter's benefits for the time period in question. Ms. Bergeron filed a petition for judicial review with the 19th Judicial District Court, alleging (1) that the transfer of resources by Ms. Carpenter to her daughter Ms. Bergeron was for a purpose unrelated to Medicaid eligibility, and (2) that the transfer was for fair market value.
The matter was briefed and oral arguments heard on June 24, 2005. From the bench, the judge reversed, finding the administrative law judge's decision arbitrary and an unwarranted exercise of discretion. On July 26, 2005 judgment was signed.
DHH appeals and asserts the following assignments of error: that the trial court (1) misapplied the standard of review, (2) erred in "failing to properly take into consideration the support of the administrative record," and (3) erred in reversing the administrative law judge's decision on the grounds that the decision was arbitrary and an unwarranted exercise of discretion.

Standard of Review
The Louisiana Administrative Procedure Act provides for judicial review over administrative adjudications. Louisiana Revised Statutes 49:964(G) states that:
The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall *608 make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
In this case, DHH appears to be claiming that the trial court erred in applying the "arbitrariness" standard in LSA-R.S. 49:964(G)(5) and not the "preponderance of the evidence" standard of LSA-R.S. 49:964(G)(6), which requires a reviewing court to give "due regard" to the administrative agency or tribunal's credibility determinations based on "first-hand observation."
Louisiana Revised Statutes 49:964(G)(5) and (6) address different considerations. Louisiana Revised Statutes 49:964(G)(5) "is used in reviewing conclusions and exercises of agency discretion," thus, this provision applies to questions of law and mixed questions of fact and law. Robert Force & Lawrence Griffith, The Louisiana Administrative Procedure Act, 42 La. L.Rev. 1227, 1285-86 (1982). Distinctly, LSA-R.S. 49:964(G)(6) "is used in reviewing the facts as found by the agency," which, according to the statute provision, includes credibility determinations. Id.
In this case, the trial court announced its decision from the bench: "I am going to rule that the decision of the board was arbitrary, clearly an unwarranted exercise of its discretion, and order that the documents be sufficient to prove that this was not an illegal transfer." (Record 169). The subsequent judgment reads: "After hearing and reviewing all evidence in this matter . . . the law and evidence are in favor of the Plaintiff in her demand against Louisiana Department of Health and Hospitals." (Record 165). The court's phrasing and language suggest that the court considered both the "arbitrariness" and "preponderance of the evidence" standards. We find that the trial court considered both LSA-R.S. 49:964(G)(5) and LSA-R.S. 49:964(G)(6) and thus did not misapply the standard of review. This assignment of error is without merit.

DISCUSSION
It is well established that in the context of judicial review over administrative action or adjudication, a court of appeal owes no deference to either the factual findings or legal conclusions of the district court, just as the Louisiana Supreme Court owes no deference to the factual findings or legal conclusions of the state's courts of appeal. Maraist v. Alton Ochsner Med. Found., 02-2677, p. 4, (La. App. 1 Cir. 5/26/04), 879 So.2d 815.[2]
*609 This dispute may be analyzed under either LSA-R.S. 49:964(G)(5) or (6). As noted above, LSA-R.S. 49:964(G)(5) entails judicial review of an administrative agency or tribunal's legal conclusions and conclusions of mixed questions of fact and law, while LSA-R.S. 49:964(G)(6) entails judicial review over an administrative agency or tribunal's factual findings. When, as in this matter, the issue on review is an administrative tribunal's evaluation of the evidence and application of law to facts, these concerns become somewhat intertwined, but remain distinct in that credibility determinations of evidence are specifically considered as factual questions under LSA-R.S. 49:964(G)(6), but the application of these and other facts to the law at issue is a legal conclusion subject to analysis under LSA-R.S. 49:964(G)(5).

Law and Analysis
Support in the Administrative Record for the Administrative Law Judge's Factual and Credibility Determinations
As noted, LSA-R.S. 49:964(G)(6) applies to an administrative tribunal's factual and credibility determinations. The administrative law judge concluded in this matter that the written care agreement document was of questionable authenticity and that Ms. Bergeron and her witnesses were not convincing. At the administrative hearing, Bruce Beever, the Medicaid analyst assigned to Ms. Carpenter's file, and Patricia Stewart, a Medicaid Area Manager, testified that although the care agreement was dated March 1, 1989, it was not notarized or dated on the signature page and thus they did not consider it to be a "valid document." [Record 21, 32] Mr. Beever and Ms. Stewart also doubted the validity of Ms. Carpenter's signature on the agreement. They based their suspicions on a comparison between Ms. Carpenter's signatures on the care agreement and on a notarized Power of Attorney she executed in 2000 [Record 32].
Ms. Bergeron testified in response that she and her mother signed the agreement in March 1989, right before Ms. Carpenter moved in with her. [Record 36]. The witnesses who signed the agreement, Mr. Daniel Andre and his wife, Ms. Jody Andre, also testified to this effect. [Record 49, 55]. When questioned by the administrative law judge as to the provenance of the care agreement, Ms. Bergeron testified that in 1989, when her mother clearly could not live alone any longer and would be moving in with her, she retained her current counsel, Peter Losavio, on a reference from her employer. Ms. Bergeron stated that she has worked for her current *610 employer, a dentist, since 1987. Her employer and the accountant for the business knew Mr. Losavio personally and recommended him to Ms. Bergeron at that time. [Record 59-60].
In her opinion, the administrative law judge expressed doubts similar to those of the Medicaid officers as to the authenticity of the care agreement document and the credibility of the live witnesses [Record 101-02]. The opinion notes that the care agreement document, although dated March 1, 1989, was not notarized, did not state the date upon which it was actually executed, had no dates on its signature/witness page, and "did not appear to be 15 years old." The administrative law judge also doubted the similarity between the notarized signature of Ms. Carpenter on the Power of Attorney notarized in 2000 and her signature on the 1989 care agreement.
While the statute requires that "due regard" be given to credibility determinations based on an administrative agency or tribunal's first-hand observation, the general principles of evidence law extend to administrative proceedings. See LSA-R.S. 49:956. Thus, a fact-finder's "disbelief of witnesses . . . cannot be used as a means to supplant affirmative proof where none exists and thus afford the basis for a judgment." Stroik v. Ponseti, 97-2897, p. 11 (La.9/9/97), 699 So.2d 1072, 1080 (citing New Orleans & Ne. R.R. Co. v. Redmann, 28 So.2d 303, 309 (La.App. 1946)). It is also well settled that "speculation, conjecture, near possibility, and even unsupported probabilities, are not sufficient to support a judgment." Pierce v. Phoenix Ins. Co., 213 So.2d 73, 76 (La. App. 1 Cir.1968).
Based on a review of the entire record and giving "due regard" to the administrative law judge's opportunity for first-hand observations at the hearing, we find that the administrative law judge's conclusions as to the authenticity of the care agreement document and the sufficiency of the witnesses' testimony are not supported and sustained by a preponderance of the evidence as required by LSA-R.S. 49:964(G)(6).
DHH has not successfully supported its suspicions regarding the authenticity of the care agreement document. While the document is clearly produced by word processing, such technology was in wide use in 1989. Despite the suspicions of the Medicaid officers and the administrative law judge as to the document's dates and the signatures, DHH has failed to present any contradictory evidence sufficient to effectively discount the facial authenticity of the care agreement document.
The administrative law judge expressed doubts in her opinion as to the accuracy and veracity of Mr. Andre's testimony because he remembered the date of the signing of the care agreement but not the exact date when Ms. Carpenter actually moved in with Ms. Bergeron. Mr. Andre's testimony is reasonably credible: one might remember an event where one was personally involved and present far more vividly than an occurrence that did not so directly engage one's involvement. DHH also argues in its brief that because Mr. and Mrs. Andre are friends of Ms. Bergeron's, their testimony is "self-serving," as is Ms. Bergeron's. [DHH brief p. 12]. While Ms. Bergeron's testimony might perhaps be thought of as "self-serving," DHH presented no evidence to impeach Mr. or Mrs. Andre's testimony. Family, friends, and neighbors are logical choices to serve as witnesses in such situations; familiarity does not constitute perjury.
The administrative law judge also doubted Ms. Bergeron's credibility as to the reasons why she deferred accepting *611 payment from her mother under the terms of the care agreement until after Ms. Carpenter entered the nursing facility and the benefits application had been filed. Ms. Bergeron testified that it was her mother's idea to have the agreement so as to ensure that the money in the Legg Mason account[3] would be used to compensate Ms. Bergeron for "what I was going to do." [Record 44]. Ms. Carpenter also sought to ensure that any remaining funds would go to Ms. Bergeron and not to her sister, who had received assistance earlier in life from her parents but had not supported Ms. Carpenter in her later years. [Record 45]. Mr. and Mrs. Andre's testimony supported these statements by Ms. Bergeron. [Record 50,55]. Ms. Bergeron also testified that she did not accept or demand any payments from her mother while her mother lived with her because "I didn't need the money. It was not an emergency in my life that I had to ask her to pay me so everything was fine." [Record 47].
Ms. Bergeron further testified: "I expected to eventually be paid with the money that she had left to go against the contract." [record 46]. Once her mother entered nursing care, however, and it was not clear "what was going to happen to my mom," Ms. Bergeron, who already had power of attorney over her mother's finances, effected the transfer and closed out the Legg Mason account in order to fulfill her mother's wishes that Ms. Bergeron receive the money and not her sister. [record 47] Neither DHH's presentation at the hearing nor the administrative law judge's "conclusions and recommendations" overcome a reasonable notion that this might be how a typical family in similar circumstances might confront such a situation.
The administrative law judge also found inconsistencies with Ms. Bergeron's testimony that she thought of the money in the Legg Mason account as both compensation for her years of caring for her mother and also "an inheritance" upon her mother's death. [Record 102]. While this understanding might appear inconsistent to the legally trained mind, a lay person might not draw such a fine distinction. This element of Ms. Bergeron's testimony does not detract from her apparent credibility. Finally, Ms. Bergeron's explanation as to how she came to retain Mr. Losavio in 1989 through her employer's personal reference is reasonable and credible. [Record 59].
Based on a thorough review of the entire record in this matter and giving due regard as required by the statute, we do not find the administrative law judge's credibility determinations to be "supported and sustainable by a preponderance of the evidence." Under LSA-C.E. art. 304, presumptions will stand unless "controverted or overcome by appropriate evidence." Thus, contracts made by competent persons are presumed valid and witnesses are presumed to speak the truth. We find no evidence in the administrative record to overcome these presumptions.
The Arbitrary, Capricious, Abuse of Discretion, or Clearly Unwarranted Exercise of Discretion Standard
Louisiana Revised Statutes 49:964(G)(5) allows a court to reverse or *612 modify an administrative determination if the determination is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." An arbitrary decision shows "disregard of evidence or of the proper weight thereof' while a capricious decision "has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence." Sterling v. Dep't of Pub. Safety & Corr., La. State Penitentiary, 97-1959, 1960, 1961, p. 13, (La.App. 1 Cir. 9/25/98), 723 So.2d 448, 455. Where the law allows for the agency or tribunal to exercise discretion, the statute's plain language concludes that such exercise must be neither abusive nor clearly unwarranted. LSA-R.S. 49:964(G)(5).
In determining this matter, the administrative law judge heard testimony and took evidence at the hearing and consulted the DHH's Medicaid Eligibility Manual sections I-1670 et seq. on "Transfer of Resources for Less than Fair Market Value." The pertinent sections of the Manual read as follows. Section I-1671, titled "General Information," excludes a transfer from assessment of penalties if it represents the applicant "using a resource to repay a valid debt or make a purchase." [Record 75]. A "valid debt" is defined as one based on a "legally binding agreement made in good faith." [Record 76]. The agreement must include "the borrower's acknowledgment of an obligation to pay; a time table and plan for repayment; [and] the borrower's express intent to repay." [Record 76]. Such transactions, according to the Manual, would not be considered transfers of resources for less than fair market value.
Section I-674, titled "Transfers on or after August 11, 1993," provides that if a transaction is deemed a "transfer of assets for less than fair market value," it will be:
presumed to be for the purpose of qualifying for [benefits], unless the individual can prove convincingly that the transfer was for some other purpose . . . In all cases, the individual shall be offered the opportunity to rebut the presumption. . . . Evidence must be provided which establishes that the transfer was solely for a reason other than to qualify for Medicaid. [Record 77].
The Manual defines "fair market value" in the same section and includes the following "note" to the definition:
Relatives and family members legitimately can be paid for care they provide. However, it is presumed that services provided for free at the time were intended to be provided without compensation. Therefore, a transfer to a relative for care provided for free in the past is a transfer of assets for less than fair market value. Tangible evidence in the form of a copy of the payback agreement that had been agreed to in writing at the time services were provided and ensuing payment records are required to rebut this presumption. [Record 81]
The next section in the Manual, I-1675, titled "Uncompensated Value," includes the following under a subsection titled "Determining Compensation":
Compensation includes items or services received by the individual prior to the transfer only if they were provided as a result of a binding contract between the parties involved. The contract must have been established at or before the transfer. [Record 88]
In analyzing the transfer in this matter, the administrative law judge considered these directives from the Manual along with the testimony under oath of Ms. Bergeron and Mr. and Mrs. Andre and the care agreement document provided by Ms. Bergeron. The administrative law judge concluded that Ms. Bergeron had not satisfactorily rebutted the Manual's stated presumptions that a transfer for less than fair *613 market value amounts to an effort to qualify for otherwise unmerited Medicaid benefits and that care by a family member that is not concurrently compensated is understood to be gratuitous. Specifically, the administrative law judge found that Ms. Bergeron presented "no convincing evidence that the Agreement was agreed in writing at the time services were rendered" and no "ensuing payment records" or other timekeeping or billing documentation pursuant to the Manual's requirements. [Record 102].
The administrative law judge noted the following factors that had contributed to her rejection of the care agreement document: 1) the document's lack of notarization or indication of date on the signature page, 2) that the document "did not appear to be 15 years old," 3) that the testimony of Mr. and Mrs. Andre was "unconvincing," 4) that although Ms. Bergeron testified that Mr. Losavio had always been her attorney, the Power of Attorney from 2000 was notarized by an attorney not associated with Mr. Losavio's firm, and 5) that the notarized signature of Ms. Carpenter on the Power of Attorney from 2000 did not appear to be the same as the unnotarized signature from the care agreement alleged to be from 1989. [Record 101-102].
This court agrees with the district court judge that the administrative law judge's conclusions based on application of the law (represented by the Manual guidelines) to the facts in this matter were arbitrary and a clearly unwarranted exercise of discretion. In effect, both DHH and the administrative law judge have attempted to supplement the Manual with requirements not included in its text. The Manual language in question asks for "tangible evidence in the form of a copy of the payback arrangement that had been agreed to in writing at the time services were required." It does not require that the document display any specific proof of date such as a notarization. It does not require the sort of "paper and ink" analysis noted in the transcript of Ms. Bergeron's administrative hearing.
Likewise, the administrative law judge's conclusions as to the credibility of Mr. and Mrs. Andre and the similarity of the two signatures by Ms. Carpenter are arbitrary and an unwarranted exercise of discretion. Nothing in the DHH's presentation at the administrative hearing effectively attacked or refuted the credibility of the live witnesses, both of whom had no personal interest in the matter and voluntarily appeared to testify under oath. As for the disputed signatures, copies of both are in the record and even a cursory examination, which is the prerogative of this court in its scope of review, suggests that they are indeed similar enough in their particulars to be those of the same person, despite the intervening eleven years during which Ms. Carpenter aged from seventy-seven to eighty-eight years of age.
The administrative law judge also based her conclusions on Ms. Bergeron's lack of "ensuing payment records" such as billing or other timekeeping documentation that might refute the presumption that Ms. Bergeron intended the care she provided as a family member to be without expectation of compensation. Again, this conclusion is arbitrary and a clearly unwarranted exercise of discretion given the facts in the record. The care agreement sets out the amount of $1,000.00 per month in compensation owed by Ms. Carpenter to Ms. Bergeron, but it also indicates clearly that payment is due "upon demand by Bergeron" and not necessarily "at the time services are performed."
Nothing in the Manual dictates that payment must be made concurrent with the services received; it is only relevant that *614 payment records be "ensuing" so as to coordinate with the terms of an agreement that can effectively rebut the presumption that family care is gratuitous. Upon her mother's entry into the nursing home and the attendant uncertainty of the future, Ms. Bergeron had sufficient grounds to "demand" the payment due her. We also note that the transaction slip from Legg Mason is a valid "payment record" to satisfy the Manual's requirements.
In conclusion, the care Ms. Bergeron provided for her mother, Ms. Carpenter, between 1989 and 2004 may have taken place without concurrent payment, but it did not take place without Ms. Bergeron's understanding and expectation of future compensation and Ms. Carpenter's uncontroverted intention that this be so. The written agreement between the two women, which has not been discredited, clearly expresses the "meeting of the minds" that signifies a binding contract. As such, it clearly satisfies the Manual's promulgated requirements to rebut the presumption of gratuitous family care under I-1674 and also to exclude the transfer from penalty as a proper use of a resource to pay a valid debt under I-1671.
Consequently, we find that the trial court committed no error in reversing the administrative law judge's findings and conclusions in this matter as arbitrary and a clearly unwarranted exercise of discretion.

CONCLUSION
For the reasons assigned, we affirm the judgment of the trial court in this matter. All costs of this appeal, in the amount of $723.96, are to be borne by defendant, the Department of Health and Hospitals.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.
DOWNING, J., concurs and assigns reasons.
While I agree with the result reached in the majority opinion, I must point out an erroneous statement of law contained therein. The opinion states that we owe no deference to the trial court's findings of fact. This is incorrect.
In Multi-Care, Inc. v. State, Dept. of Health & Hospitals, 00-2001, p. 4 (La.App. 1 Cir. 11/9/01), 804 So.2d 673, 676, we discussed the allocation of fact finding in Louisiana's three-tiered judicial system as explained in Virgil v. American Guarantee and Liability Insurance Company, 507 So.2d 825, 826 (La.1987), as follows:
In Virgil, the Louisiana Supreme Court observed that the manifest error standard of review applies to the trial court's factual findings even when the evidence before it consists solely of written reports, records and depositions. Id. The supreme court discussed the allocation of fact finding in Louisiana's three-tiered court system as follows: [fn. omitted]
Louisiana's three-tiered court system allocates the fact finding function to the trial courts. Because of that allocation of function (as well as the trial court's normal procedure of evaluating live witnesses), great deference is accorded to the trial court's factual findings, both express and implicit, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appellate review of the trial court's judgment.
The Louisiana legislature enacted Acts 1997, No. 128, § 1, effective June 12, 1997, to amend paragraph G(6) of La. R.S. 49:964 to make the trial court a fact finder that weighs the evidence and makes its own findings of fact by preponderance of *615 the evidence. Multi-Care, 00-2001 at p. 4, 804 So.2d at 675.
Multi-Care appears to be the only reported case analyzing and addressing the effect of the 1997 amendment to La. R.S. 49:964 G(6). None of the cases cited by the majority in their footnote address the effect of the 1997 amendment. Rather, they repeat the tired pre-amendment mantra that judicial review is appellate review and that the court of appeal owes no deference to the district court's factual findings.
Generally, a court of appeal engages in fact finding only when, in its exercise of appellate jurisdiction, it concludes that fact-finding in the court below has been interdicted by legal error. See Evans v. Lungrin, 97-0541, pp. 6-7 (La.2/6/98), 708 So.2d 731, 735.
Under the current enactment of La. R.S. 49:964 G(6), however, the district court is not so limited. Rather, it is mandated to make its own determination of whether the agency decision is supported and sustainable by a preponderance of evidence. "In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety." (Emphasis added.) La. R.S. 49:964 G(6). Therefore, in this regard, the district court exercises original jurisdiction and acts as a fact finder rather than an appellate court.
Accordingly, we "defer to the trial court's factual determinations and use a manifest error standard of review where the legislature has empowered it with the function of fact finding," while giving due deference to the agency's credibility determinations. La. R.S. 49:964 G(6). See St. Martinville, L.L.C. v. Louisiana Tax Com'n, 05-0457, p. 4 (La.App. 1 Cir. 6/10/05), 917 So.2d 38, 41.
Here, the trial court's findings of fact based on the preponderance of the evidence were not manifestly erroneous. I also agree with the majority that DHH's actions in contravention of its own rules were an abuse of discretion. Accordingly, I concur in the result reached.
NOTES
[1] The DHH's routine resource eligibility screening examines asset transfers that occur thirty-six months prior to the "baseline date" when an individual is either institutionalized or applies for benefits; any asset transfers that take place after the baseline date are subject to scrutiny as well. (Medicaid Eligibility Manual § I-1674/Record 77).
[2] We recognize this court's holding in Multi-Care, Inc. v. State of Louisiana, Department of Health and Hospitals, 00-2001 (La.App. 1 Cir. 11/9/01); 804 So.2d 673. While that decision seems to indicate a different standard of review, we find the analysis in Maraist to be the correct approach in light of the qualitative difference between judicial review of administrative adjudications and standard judicial district court proceedings.

We recognize that the 1997 amendment to Louisiana Revised Statutes 49:964(G)(6) em-powered district courts with the function of fact finding in the administrative context. St. Martinville, L.L.C. v. La. Tax Comm'n, 917 So.2d 38, 41 ([La.App. 1 Cir.]2005). This change has not, however, affected the standard of review available to courts of appeal when they sit in review over district court decisions in the administrative context, a standard of review which, as noted in Maraist, is significantly broader than that mandated in the non-administrative context.
We note also that the Second, Fourth, and Fifth Circuit Courts of Appeal have reached conclusions similar to Maraist, as well as the following decisions in our own court: Cochrane v. La. Tax Comm'n, 04-1671, p. 3 (La. App. 1 Cir. 5/18/05); 905 So.2d 353, 356; Hakim-El-Mumit v. Stalder, 03-2549, p. 3 (La.App. 1 Cir. 10/29/04); 897 So.2d 112, 113; EOP New Orleans, L.L.C. v. La. Tax Comm'n, 01-2966, p. 5 (La.App. 1 Cir. 8/14/02); 831 So.2d 1005, 1008, writ denied, 02-2395 (La.11/27/02); 831 So.2d 286; Johnson v. New Orleans Charities Bldg. Corp., 00-2772, p. 4 (La.App. 1 Cir. 2/15/02); 812 So.2d 741, 743, rehearing denied; Cleco Evangeline, L.L.C. v. La. Tax Comm'n, 01-0561, p. 3 (La. App. 1 Cir. 6/22/01); 808 So.2d 740, 743, aff'd, 01-2162 (La.4/3/02); 813 So.2d 351; Mouton v. State of La., Dep't of Soc. Servs., 00-0397, p. 6 (La.App. 1 Cir. 2/16/01); 808 So.2d 485, 489; Blair v. Stalder, 99-1860, p. 9 (La.App. 1 Cir. 1/31/01); 798 So.2d 132, 139; Comm-Care Corp. v. La. Tax Comm'n, 99-0709, p. 5 (La.App. 1 Cir. 6/23/00); 762 So.2d 770, 773, writ denied, 00-2271 (La.10/27/00); 772 So.2d 656; Bless Home Health Agency v. La. Dep't of Health and Hospitals, 99-0936, p. 4 (La.App. 1 Cir. 5/22/00); 770 So.2d 780, 783; Mayo v. Mun. Police Bd. of Review, 98-1864, p. 6 (La.App. 1 Cir. 11/5/99); 745 So.2d 188, 191; Giles v. Cain, 98-0212, p. 7 (La. App. 1 Cir. 4/19/99); 734 So.2d 109, 114; vacated on other grounds, 1999-2328 (La.6/2/00), 762 So.2d 1116.
[3] At oral argument, Ms. Bergeron's counsel argued that the account represented funds from the sale of Ms. Carpenter's home. The sale netted roughly $100,000.00, which was used for necessary expenses during the course of Ms. Carpenter's residence with her daughter. At the time of the transfer at issue, the balance was roughly $29,000.00, according to the Legg Masson account statement introduced into evidence at the administrative hearing. The total amount due to Ms. Bergeron under the terms of the agreement would have been approximately $180,000.00 by the time Ms. Carpenter moved into the nursing home in early 2004.