993 So.2d 271 (2008)
CEDYCO CORPORATION
v.
DEPARTMENT OF NATURAL RESOURCES.
No. 2007 CA 2500.
Court of Appeal of Louisiana, First Circuit.
July 23, 2008.
*272 Martin L. Morgan, Inabnet & Jones, L.L.C., Mandeville, LA, for Plaintiff-Appellant, Cedyco Corporation.
W. Stephen Walker, Baton Rouge, LA, for Defendant-Appellee, James H. Welsh, Commissioner of Conservation, Department of Natural Resources.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Plaintiff, Cedyco Corporation (Cedyco), sought judicial review of a decision of the Division of Administrative Law (DAL), which upheld the decision of the Commissioner of Conservation (Commissioner).[1] From the district court judgment affirming the Commissioner's decision, as upheld by the DAL, Cedyco has appealed. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
This matter involves a letter by the Commissioner declaring certain oilfield sites operated in the state of Louisiana by Cedyco to be orphaned[2] pursuant to the Louisiana Oilfield Site Restoration Law, LSA-R.S. 30:80, et seq. (the Act).[3] The jurisdiction and authority of the Commissioner are set forth in LSA-R.S. 30:4. Pursuant to LSA-R.S. 30:4(A), the Commissioner has jurisdiction and authority "over all persons and property necessary to enforce effectively the provisions of this Chapter and all other laws relating to the conservation of oil or gas." In furtherance of that jurisdiction, LSA-R.S. 30:4(C) grants the Commissioner the authority to make, after appropriate notice and hearing, "any reasonable rules, regulations, and orders that are necessary from time to time in the proper administration and enforcement of this Chapter." Specifically, with respect to this case, the Commissioner is authorized to make such rules, regulations, and orders: (1) to require the drilling, casing, and plugging of wells to be done in such a manner as to prevent the escape of oil or gas out of one stratum to another; (2) to prevent fires; and (3) to identify the ownership of all oil or gas wells, producing leases, refineries, tanks, plants, structures, and all storage and transportation equipment and facilities. LSA-R.S. 30:4(C)(1)(a)(i), (7), and (8).
Furthermore, in the public interest and within the police power of this state, the legislature established "an oilfield site restoration commission and an oilfield site restoration fund to provide for the proper and timely cleanup, closure, and restoration of oilfield sites, to be administered by the assistant secretary of the office of conservation within the Department of Natural Resources." LSA-R.S. 30:81(B). Pursuant to the provisions of this Act, the assistant secretary of the office of conservation, i.e., the Commissioner, has the authority to declare a site to be an orphaned oilfield site upon a finding that: (1) no responsible party can be located, or such party has failed or is financially unable to undertake actions ordered by the assistant secretary; and (2) the oilfield site either: (a) was not closed or maintained in accordance *273 with all statutory requirements and the regulations adopted thereunder; or (b) constitutes or may constitute a danger or potential danger to the public health, the environment, or an oil or gas strata. LSA-R.S. 30:91(A)(1) and (2). Once a site has been declared to be an orphaned oilfield site, the Commissioner is authorized to conduct "site restoration," which is defined by the Act as "any and all oilfield site restoration activities required of a responsible party of an oil or gas property by regulations adopted by the office of conservation pursuant to this Subtitle, including without limitation plugging of oil and gas wells, pit closure, site remediation, and removal of oilfield equipment." LSA-R.S. 30:92(A) and 30:82(11).
Pursuant to the authority granted him by LSA-R.S. 30:4(C), the Commissioner promulgated Statewide Order No. 29-B (Order 29-B).[4] Order 29-B addresses numerous aspects of oil and gas production, including drilling applications, pollution control, the plugging and abandonment of wells, and the disposal of waste generated from oil and gas production. Cedyco received various compliance orders issued by the Commissioner between September 27, 2004, and December 14, 2005, concerning alleged violations of Order 29-B.
Compliance Order No. E-I & E-04-0286 was issued on September 27, 2004, concerning the CAMILLE LEFORT NO. 1  SN 217760, Cut Off Field in Lafourche Parish. This compliance order advised Cedyco that it had violated Order 29-B because: (1) an unacceptable degree of combustible vegetation was present in and around the production facility, which presented a fire hazard; (2) the needle valve on the wellhead was not being maintained in acceptable working order; (3) evidence existed that the lease tankage within the production facility lacked structural integrity, which presented a danger of explosion and fire and the potential for the unauthorized discharge of Exploration & Production (E & P) Waste; and (4) evidence existed that E & P Waste had been discharged in the vicinity of the oil sales point. According to the compliance order, these deficiencies at the site were in violation of LAC 43:XIX.115(E) and (F) and 303(E).[5]
Compliance Order No. E-I & E-04-0333 was issued on November 16, 2004, concerning the LIEB 1 RA SUA; I DELCAMBRE NO. 1  SN 212900, Bayou Hebert Field in Vermilion Parish. According to this compliance order, inspectors had determined that the above well was in an abandoned condition and was classified as having no future utility in accordance with LAC 43:XIX.137(A)(2)(c).[6] Cedyco was directed to plug and abandon the well, as well as to remove all equipment, structures, and trash, and perform any other restoration activity as required by LSA-R.S. 30:4(C)(1).
Finally, Compliance Order No. E-I & E-05-0346 was issued on December 14, 2005, concerning various wells of the Manila Village Field in Jefferson Parish. According to the compliance order, the inspectors from the office of conservation had discovered the following problems with the listed wells: (1) the existing wellsites on the lease were not properly identified; (2) evidence existed that the flowlines from at least two of the wells to the production *274 facility lacked structural integrity; (3) the tank battery for one of the wells was not properly identified; (4) the oil storage tanks for one of the wells were not equipped with the proper locking or sealing devices; and (5) evidence existed that an unauthorized discharge of E & P Waste had occurred due to the failure of the operator to properly maintain the lease tankage on one of the wells. According to the compliance orders, these deficiencies at the site were in violation of LAC 43:XIX.103(D), 115, 119(E)(1), 121(B)(2), and 303(E).[7]
On February 2, 2006, after Cedyco had failed to remediate the sites as ordered, the Commissioner issued a "Ten Day Orphan Letter" (orphan letter) notifying Cedyco that the oilfield sites subject to these compliance orders had not been closed in accordance with Order 29-B and that the sites were declared abandoned pursuant to the Act.[8] Cedyco was further advised that the sites would be considered orphaned as defined by the Act, unless Cedyco requested a fact finding hearing within ten days of the date of the orphan letter.
Cedyco timely requested a fact finding hearing, and the Commissioner requested an adjudicatory hearing before the DAL in accordance with LSA-R.S. 49:992(D)(7). A hearing was set for July 7, 2006; however, on July 6, 2006, Cedyco and the Commissioner entered into a consent order in which Cedyco stipulated that the provisions of the orphan letter were correct. Cedyco further stipulated to certain exhibits that were to be introduced by the Commissioner. Finally, both parties agreed to keep the record open until September 7, 2006, for the submission of evidence.[9]
Approximately one week before the final submission date, inspectors from the office of conservation were sent to the various sites to perform final inspections. According to their reports, although some of the deficiencies had been corrected, the sites were still not in full compliance. Furthermore, a new gas leak was noted at one of the sites. On November 13, 2006, the administrative law judge for the DAL signed a judgment affirming the actions of the Commissioner in issuing the orphan letter. Cedyco applied for a rehearing, which was denied on December 21, 2006, after a hearing. Thereafter, Cedyco filed a petition for judicial review in the district court.[10] After reviewing the administrative record, the district court rendered a judgment affirming the decision by the DAL, which upheld the decision of the Commissioner. It is from this judgment that Cedyco has appealed.[11]

DISCUSSION
On appeal, Cedyco contends that the Commissioner was arbitrary and capricious in his determination that the oilfield sites were not maintained in accordance with all statutory requirements. Specifically, *275 Cedyco contends that the decision to declare the oilfield sites to be orphaned was excessive considering the nature of the violations and the continued attempts to correct the violations.
Louisiana Revised Statute 49:964(G)(5) authorizes a court to reverse or modify the decision of an agency if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." An "arbitrary" decision shows disregard of evidence or of the proper weight thereof, while a "capricious" decision has no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. Carpenter v. State, Dept. of Health and Hospitals, 05-1904 (La.App. 1st Cir.9/20/06), 944 So.2d 604, 612, writ denied, 06-2804 (La.1/26/07), 948 So.2d 174. Where the law allows for the agency or tribunal to exercise discretion, the statute's plain language concludes that such exercise must be neither abusive nor clearly unwarranted. Id.
Based on a thorough review of the record, we find that there is substantial evidence to support the Commissioner's decision, as upheld by the DAL. Clearly, the orders issued by the Commissioner were well within the authority granted to him by the applicable provisions of LSA-R.S. 30:4(C). Furthermore, the record indicates that Cedyco was repeatedly notified of the deficiencies at the sites, and that despite numerous assurances by Cedyco that the deficiencies would be addressed, the sites were never brought into full compliance. Thus, we determine that the Commissioner's decision, as upheld by the DAL, does not appear to have been arbitrary, capricious, or an abuse of discretion. Accordingly, the judgment of the district court is affirmed. All costs of this appeal are assessed to Cedyco Corporation.
AFFIRMED.
NOTES
[1] The Commissioner is the head of the office of conservation of the Department of Natural Resources, and he is the assistant secretary for the office of conservation. See LSA-R.S. 36:3(2), 357(A), and 806; LSA-R.S. 30:3(2).
[2] An "orphaned oilfield site" is defined as an "oilfield site which has no continued useful purpose for the exploration, production, or development of oil or gas and which has been declared to be an orphaned oilfield site by the assistant secretary under R.S. 30:91." LSA-R.S. 30:82(7).
[3] See LSA-R.S. 36:359(I).
[4] See LAC 43:XIX.101-641.
[5] Louisiana Administrative Code 43:XIX.115 addresses fire hazards, while LAC 43:XIX.303(E) addresses the discharge of E & P Waste.
[6] Louisiana Administrative Code 43:XIX.137(A)(2)(c) addresses the plugging and abandonment of wells.
[7] Louisiana Administrative Code 43:XIX.103(D) and 119(E)(1) address certain signage requirements, and LAC 43:XIX.121(B)(2) prohibits the possession of improper mechanical means for transferring oil from one lease tank or well to the lease tank or well of another lease.
[8] The orphan letter also referenced a fourth compliance order bearing number E-I & E-04-0334. There is no evidence in the record concerning this compliance order, and the Commissioner acknowledges in his brief to this court that Cedyco has been deemed in compliance with that order.
[9] The parties verbally agreed to these stipulations during a status conference on July 5, 2006. The parties signed the consent order on July 6, 2006, and the administrative law judge signed the order on July 7, 2006.
[10] See LSA-R.S. 49:964(B) and 992(B)(3).
[11] See LSA-R.S. 49:965; cf. LSA-R.S. 30:15.