879 So.2d 815 (2004)
Melissa Cornes Maraist, Wife of/and Patrick Ellis MARAIST, Individually and on Behalf of Their Minor Daughter, Brittany Maraist
v.
ALTON OCHSNER MEDICAL FOUNDATION, Ochsner Health Plan, Medical Center of Baton Rouge, Inc., Health Trust Options, Inc., d/b/a Health Trust Inc., Lois H. Gesn, M.D., Shaun M. Kemmerly, M.D. and David C. Kemp, M.D.
No. 2002 CA 2677.
Court of Appeal of Louisiana, First Circuit.
May 26, 2004.
*816 Harry T. Widmann, Metairie, Counsel for Plaintiff/Appellant Melissa Cornes Maraist, wife of/and Patrick Ellis Maraist, individually and on behalf of their minor daughter, Brittany Maraist.
Stephanie Laborde, Covington, Counsel for Defendant/Appellee Louisiana Patient's Compensation Fund.
Before: FOIL, FITZSIMMONS, and GAIDRY, JJ.
GAIDRY, J.
This is an appeal from a district court judgment upholding an administrative adjudication by the Louisiana Patient's Compensation Fund Oversight Board. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
In February 1992, Brittany Maraist, daughter of plaintiffs, Melissa Comes Maraist and Patrick Ellis Maraist (the Maraists), suffered severe neurological injuries as the result of medical malpractice. The Maraists sued and ultimately settled with the health care provider, and then proceeded against the Louisiana Patients' Compensation Fund (PCF). The PCF settled with the Maraists for their general *817 damages, medical expenses through August 31, 1995, and parental custodial care through September 30, 1995, with the Maraists reserving their rights against the PCF with respect to medical expenses and custodial care from those dates forward.
The Maraists were reimbursed by the PCF for the actual costs incurred by them to hire sitters to care for Brittany and were also reimbursed for their own time. The reimbursement for the sitters was at the rate of $11.00 per hour, and the reimbursement for the Maraists' time was at a rate of $6.00 per hour. The Maraists were reimbursed for care for Brittany twenty-four hours per day, seven days per week, regardless of the fact that some of their time was spent sleeping, caring for their other small children, and performing household tasks, in recognition of the fact that Brittany might need care from them at any time.
The Maraists were reimbursed at the above rates from the time of the injury through August 12, 1997. On August 12, 1997, the Maraists sent a letter to the PCF, requesting that the reimbursement rate for care they personally provided be increased to $15.00 per hour. The PCF Claims Committee held an administrative hearing on April 2, 1998 to consider the request, and after the hearing, the committee made a recommendation that the Maraists' hourly reimbursement rate be raised from $6.00 per hour to $8.00 per hour. The committee recommended that the increase not be made retroactive. The committee's recommendation was adopted by the PCF Oversight Board on October 1, 1998, and the Maraists filed a petition for judicial review in accordance with La. R.S. 49:964(A)(1).[1]
The trial court held a judicial review hearing and afterwards found that grounds for reversing or modifying the administrative decision of the PCF's Oversight Board did not exist. A judgment affirming the PCF's decision was rendered on September 26, 2002, and this appeal followed.
On appeal, the Maraists make the following assignments of error:
1. The district court committed an error of law in that it applied the "arbitrary and capricious" standard when, in actuality, the "preponderance of the evidence" standard governed.
2. The unrefuted and indisputable testimony offered by plaintiffs below demonstrated that this case is indistinguishable from Kelty v. Brumfield, 96-0869 (La.App. 4 Cir. 3/12/97), 691 So.2d 242, and the trial court erred in not granting relief consistent with that decision.
3. The district court erred in not making the increase awarded by the PCF Oversight Board retroactive from October 1995, with interest and attorney fees.

DISCUSSION
When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Once a final judgment is rendered by the district court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Blair v. Stadler, 99-1860, *818 p. 9 (La.App. 1 Cir. 1/31/01), 798 So.2d 132, 139; Blanchard v. Allstate Ins. Co., 99-2460, p. 5 (La.App. 1 Cir.10/18/00), 774 So.2d 1002, 1005, writ denied, 01-0285 (La.3/23/01), 787 So.2d 997.

Standard of Judicial Review
Louisiana Revised Statutes 49:964(G) provides that the district court may reverse or modify the decision of the administrative agency on judicial review only if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
The Maraists claim that the district court erred in applying the "arbitrary and capricious" standard instead of the "preponderance of the evidence" standard. A review of the trial court's judgment reveals that this claim is baseless. The trial court judgment states that:
[T]he Court finds that the administrative decision rendered by the Louisiana Patients' Compensation Fund Oversight Board regarding the proper hourly rate for parental custodial care provided to Brittany by her parents is reasonable, supported by the evidence, not arbitrary or capricious, and within the discretionary authority of the Board to decide such matters.
Thus, it is clear that the court considered both the "preponderance of the evidence standard" and the "arbitrary and capricious" standard, and determined that reversal or modification of the Board's decision was not warranted. This assignment of error is without merit.

Distinguishability from Kelty
The plaintiffs next assert that their case is factually indistinguishable from Kelty v. Brumfield, 96-0869 (La.App. 4 Cir. 3/12/97), 691 So.2d 242, and the trial court erred in not awarding relief consistent with Kelty.
In Kelty, the plaintiffs' child was born with severe mental and physical handicaps because of an act of medical malpractice. The Keltys settled with the health care provider, and it was determined that they were also entitled to future care and related medical benefits under La. R.S. 40:1299.43. After an administrative hearing, the Board's Claims Committee made an award to the Keltys which included payment for custodial care.
The Keltys filed a petition for judicial review, arguing that the Board's decision was manifestly erroneous and an abuse of discretion. The Keltys demanded that Mrs. Kelty be paid for twenty-four hours per *819 day for custodial care and that Mr. Kelty be paid for sixteen hours per day for custodial care. The Keltys also requested that the rate of reimbursement for custodial care be increased from $6.00 per hour to $31.00 per hour. The trial court rendered a judgment on January 22, 1996, which found the payment of $6.00 per hour to be manifestly erroneous and modified the award to increase the rate of reimbursement. On appeal, the Board argued that it was limited to reimbursement at a rate of $6.00 per hour because, in December of 1993, the Board adopted a rule that imposes a $6.00 per hour limit on services provided by a family member, regardless of their level of training. See LAC 37:III, Chapter 19 § 1917(B). The court of appeal declined to address the efficacy of the Board's limit on the value of services provided by a family member because the rule had no retroactive effect under La. R.S. 49:954(B), and the Keltys filed for custodial care reimbursement ten years prior to the rule's enactment. Because the court found that the $6.00 limit imposed by LAC 37:III, Chapter 19 § 1917(B) was not applicable to the Keltys' case, and because they found that the services provided by the Keltys were more comparable to nursing care than sitter care, even though the Keltys were not formally trained, licensed, or certified, the court awarded them $15.00 per hour for custodial care. The court based its finding that the care provided by the Keltys was more akin to nursing care than sitter care on the following facts:
1. The Keltys fed the child four times per day through a gastro-intestinal tube, which involved administering medications, feeding, monitoring for vomiting, and gas release through the gastro-intestinal tube after the feeding. The feedings lasted approximately one and a half hours each, with the first feeding beginning at 8:45 a.m. and the last feeding concluding at 2:10 a.m.
2. Mrs. Kelty provided both physical and occupation therapy for the child every day, for which Mrs. Kelty received informal training by therapists.
3. The child received a daily bath, which required the assistance of both parents because she could not sit unattended.
4. At least every other day, the Keltys administered either a suppository or an enema to facilitate elimination because the child's bowels could not function independently.
5. The Keltys monitored the child for a gag reflex twenty-four hours per day to prevent her from aspirating vomit, which could be lethal.
Regarding the Kelty's request that they be paid for twenty-four hours per day for Mrs. Kelty's services and sixteen hours per day for Mr. Kelty's services, the court noted that, although the child required continual monitoring, it was unrealistic to assume that at all times one of the parents attended to her to the exclusion of all other tasks. In addition, the court noted that parents are obligated to provide a certain level of care for their children. The court estimated from the testimony in the record that the amount of time Mrs. Kelty spent completing tasks other than caring for the child and the amount of time she would have normally spent caring for the child would be approximately four to five hours per day. Therefore, the court reduced the Keltys' daily reimbursement amount by twenty percent.
Although Brittany Maraist's condition and needs are similar to the Keltys' child, Brittany's daily care is primarily provided by sitters who have been trained by Melissa Maraist. On a typical weekday, the sitters arrive at 8:00 a.m. and provide the *820 great majority of Brittany's care until 5:00 p.m. In addition, the sitters generally care for Brittany an additional five to fifteen hours during the weekend. These sitters are paid for in full by the PCF. When the sitters are not present, Brittany's parents, primarily her mother, provide her care. The care provided by the Maraists after the sitters leave consists of the following:
1. When the sitters leave at 5:00 p.m., Brittany is usually sitting strapped in a chair to give her a different position. Melissa checks on Brittany while she cooks dinner and does homework with her older child.
2. At 7:00 p.m., Melissa changes Brittany's diaper and positions her in her bed.
3. At 9:00 p.m., Melissa gives Brittany her last feeding, puts on a nighttime diaper, connects her water pump, and Brittany goes to sleep. The Maraists have a baby monitor so that they can monitor Brittany while she is sleeping. Periodically, when Brittany is sick or is having a bad seizure, the Maraists provide care during the night; however, typically both Brittany and the Maraists sleep through the night without interruption.
4. Between 7:30 and 8:00 a.m., Melissa removes Brittany's pillows and turns off her water pump. The sitters arrive to care for Brittany at 8:00 a.m.
Unlike the Keltys, the Maraists have sitters who primarily care for Brittany. The sitters provide all but one of Brittany's feedings, medications, and treatments on weekdays, and provide about half of them on weekends. In addition, during the time the sitters are paid by PCF to provide care for Brittany, they occasionally care for the Maraists' two other children, at no additional cost to the Maraists. Moreover, the majority of the time that the Maraists are providing Brittany's care, she is asleep, and about half of that time the Maraists are also asleep. This case is factually distinguishable from Kelty, and this assignment of error is without merit.

Retroactivity of Award, Interest, and Attorneys' Fees
The Maraists next assert that the district court erred in not making the increase awarded by the PCF Oversight Board retroactive to October 1995, with interest and attorney fees.
Subsequent to their settlement of parental custodial care through September 30, 1995, the Maraists made claims for reimbursement on a regular basis for parental custodial care. They accepted the reimbursement each time. Finally, in August of 1997, the Maraists' attorney sent a letter to the PCF, stating "At this time I must demand that the compensation for the Maraist's [sic] be corrected and increased to $15.00 per hour on a 24 hour per day basis with credit for those times when the private duty nurse is on service." There was no request that the award be made retroactive. Also, the Maraists' claim for an increase was based on their assertion that their case is factually indistinguishable from Kelty; however, as we have already pointed out, there are significant factual distinctions between this case and Kelty, and the circumstances warranting an increased award in Kelty simply do not exist here. The fact that the Oversight Board elected to increase the Maraists' rate of compensation at the time of their 1997 request does not effect the previous payments made under the settlement. Thus, the trial court did not err in refusing to modify the decision of the Oversight Board to make the increase retroactive.
*821 The Maraists' demand for attorney fees is governed by La. R.S. 40:1299.43(E)(2), which provides that the court "shall award reasonable attorney fees to the claimant's attorney if the court finds that the patient's compensation fund unreasonably fails to pay for medical care within thirty days after submission of a claim for payment of such benefits."
The trial court, in declining to award attorney fees, found that the PCF did not unreasonably fail to pay for medical care within thirty days after submission of a claim. This finding is supported by the record. The Maraists do not assert that the PCF has failed to pay any of their claims for reimbursement within thirty days of submission. Furthermore, the Maraists did not even request an increase in the award until August 12, 1997, so it cannot be argued that the PCF was unreasonable in failing to pay them an increased amount in October of 1995. Finally, in their attorney's letter to PCF requesting an increase, the Maraists do not ask that the rate of compensation be made retroactive; they simply ask that it be increased based upon the increase recently awarded to the Keltys. The denial of attorney fees was appropriate.
The Maraists were awarded judicial interest on the increase from $6.00 per hour to $8.00 per hour; their argument on appeal is that this award of interest should be made retroactive to October 1995. Since we have decided that the increase should not be made retroactive to October 1995, interest retroactive to that date is likewise inappropriate.
This assignment of error is without merit.

DECREE
For the above reasons, we affirm the judgment of the trial court. Costs of this appeal are assessed to appellants, Melissa and Patrick Maraist.
AFFIRMED.
NOTES
[1] La. R.S. 49:964(A)(1) provides that a person who is aggrieved by a final decision or order in an adjudication proceeding is entitled to judicial review under Title 49, Chapter 13.