LESTER AND KIMBERLY DAVID AS GUARDIANS OF BRANDON DAVID AND BRANDON DAVID, INDIVIDUALLY
v.
LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS
No. 2006 CA 2350.
Court of Appeals of Louisiana, First Circuit.
September 14, 2007.
NOT DESIGNATED FOR PUBLICATION
RICHARD B. MINOGUE, New Roads, LA, Counsel for Plaintiffs/Appellees, Lester and Kimberly David as Guardians of Brandon David and Brandon David Individually.
DAVID L. McCAY, Baton Rouge, LA, DAWN N. GUILLOT, Baton Rouge, Counsel for Defendant/Appellant, Louisiana Department of Health and Hospitals.
Before: WHIPPLE, GUIDRY, and HUGHES, JJ.
WHIPPLE, J.
The Louisiana Department of Health and Hospitals appeals from a judgment of the district court reversing, in part, an administrative decision and granting retroactive cash-subsidy benefits to plaintiffs, Lester and Kimberly David, as guardians of Brandon David, and Brandon David, individually. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
Pursuant to Act 378 of the 1989 Regular Session of the Louisiana Legislature, the Department of Health and Hospitals ("DHH") was charged with implementing the Community and Family Support Cash Subsidy Plan to provide benefits to families of eligible children with severe and profound disabilities.[1] Codified in LSA-R.S. 28:821, et seq., the act specifically provided for the development of a plan and system of community and family support for persons with developmental disabilities and their families, and for implementation of the plan by DHH in cooperation with the Department of Social Services.
Thus, the DHH, through the Office for Citizens with Developmental Disabilities ("OCDD"), is statutorily charged with administering the cash-subsidy program to address the exceptionalities of developmental delay for children under the age of nine, autism, severe mental retardation, profound mental retardation, deafness/blindness, traumatic brain injury, multihandicapped, orthopedic handicap and other health impairments.[2] Eligibility and screening of applicants for cash-subsidy benefits is performed by the local agency, which in this case is Capital Area Human Services District ("Capital").[3]
On May 30, 1995, Lester and Kimberly David applied for cash-subsidy benefits for their minor son, Brandon, who suffers from autism and is severely mentally challenged. Because the number of applications requesting benefits outnumbers the available cash-subsidy slots, an applicant's name is placed on a cash-subsidy waiting list and the applicant is notified when his name reaches the top of the list and the application becomes subject to review for eligibility. As the local agency responsible for screening Brandon's application, Capital sent a notification to the Davids on November 10, 1998 that Brandon's application had reached the top of the cash-subsidy waiting list and instructed the Davids to respond within fifteen days from receipt of the letter to commence the eligibility review. The correspondence was properly addressed to the Davids. However, they failed to respond to the notification letter within the time period set forth by Capital. Thus, Capital removed Brandon's application from the cash-subsidy waiting list on the grounds of failure to respond.
In March of 2002, the Davids contacted Capital to inquire as to the status of Brandon's application on the waiting list and were informed that his name had been removed from the list. Capital investigated the removal and concluded that Brandon had been properly removed from the list and that "just cause" did not exist for reinstatement on the waiting list. The Davids appealed the decision to the DHH Bureau of Appeals. After a full hearing on the matter on August 21, 2003, the Bureau of Appeals determined that Capital had failed to comply with the promulgated rule set forth in Louisiana Register, Volume 23, No. 7, July 20, Community and Family Support System, and the rules set forth in the Cash Subsidy Program Policy and Procedural Manual dated May 6, 1998. Specifically, the Bureau of Appeals concluded that because Capital failed to prove that telephone contact had been made with the Davids regarding slot availability, notification of the slot availability should have been via certified mail. Accordingly, the Bureau of Appeals reversed Capital's decision to remove Brandon's name from the waiting list for failure to respond. In so doing, the Bureau of Appeals ordered that Capital reinstate his name to the list and immediately "issue a slot" to "expeditiously" determine eligibility, as Brandon was approaching the maximum age for the program.
As a result of this decision, Capital contacted the Davids to commence the eligibility process. By letter dated September 9, 2003, the Davids were informed that Brandon was eligible to receive the cash subsidy. Thus, an individual agreement was executed by the Davids and Capital on September 30, 2003, in accordance with the cash-subsidy rule in effect as of May of 2002, and Brandon subsequently began receiving cash-subsidy benefits.
The Davids then filed a second appeal with the Bureau of Appeals, challenging Capital's decision to deny Brandon retroactive eligibility for benefits. Noting that the September 9, 2003 letter only referenced certification for prospective benefits, the appeal alleged that the September 9, 2003 letter from Capital notifying the Davids that Brandon had met the eligibility requirements to participate in the program nonetheless constituted a denial of retroactive benefits to Brandon, which he should have been entitled to receive under the previous decision of the Bureau of Appeals. The Davids further alleged that the terms of the cash-subsidy agreement presented to them provided that benefits would be covered solely for the fiscal year of July 1, 2003 through June 30, 2004.
The matter was heard before the Bureau of Appeals on June 2 and 3, 2004. The issues presented before the Bureau at the hearing were: (1) whether Brandon would have been eligible for cash-subsidy benefits under the cash-subsidy rules in effect in November of 1998; and (2) whether, if Brandon had been eligible for cash-subsidy benefits in November of 1998 and for any of the succeeding years, he would have been found eligible as a result of the redetermination review procedure for continuing eligibility in each of the succeeding years through 2003. At the conclusion of the hearing, the Bureau of Appeals rendered a thirty-five page opinion in favor of DBE, finding that Brandon would not have been found eligible for the cash-subsidy program had his eligibility been considered in November of 1998, because there was no acceptable documentation on file within one year of November 1998 setting forth a qualifying exceptionality for the program under the rules in effect at that time. The Bureau of Appeals further concluded that thereafter, Brandon's name would have been removed from the cash-subsidy waiting list and no determination of his continued eligibility for the program in succeeding years would have been necessary.
The Davids appealed the Bureau of Appeals' decision to the Eighteenth Judicial District Court, pursuant to LSA-R.S. 49:964 and LSA-R.S. 46:107 (C). On review, the district court reversed the decision of the Bureau of Appeals in part and granted Brandon retroactive benefits, from the date the Louisiana Department of Education Bulletin 1508 autism criteria was amended in 2000, to the date he began receiving benefits under the program. In written reasons for judgment, the district court noted:
In a previous agency appeal, Brandon David was found to be improperly removed from the waiting list in 1998, a fact which is not in dispute. If he had not been improperly removed from the list, and he reached the top of the list in proper order, he would have been evaluated and his parents would have been notified that he was not eligible in 1998 under the 1508 criteria in place at the time.
It is the opinion of this Court that had the David's [sic] been notified of Brandon's denial because his condition did not fit within the criteria in place at the time, they would have reapplied for the subsidy when he did fit the criteria after 1508 was amended in 2000. At that time, the David's [sic] would have had an opportunity to obtain "documentation from a licensed medical or mental health professional" attesting to his fulfillment of the 1508 criteria as allowed by the regulations in place before the 2002 revision. At that point in time, Brandon would have been eligible for the subsidy[.]
DHH now appeals, assigning error to the judgment of the district court, as follows:
1. The District Court erred in finding that the Bureau of Appeals for DHH had jurisdiction or authority to render a money judgment for retroactive cash subsidy benefits.
2. The District Court erred in finding that the Davids had properly and timely appealed the denial of retroactive benefits.
3. The District Court erred in awarding the Davids partial retroactive benefits from 2000 to 2003. The Court exceeded its authority by reversing a decision of an administrative agency without the presence of any of the criteria set forth in La. R.S. 49:964(G).

STANDARD OF REVIEW
The Louisiana Administrative Procedure Act provides for judicial review of administrative adjudications. As set forth in LSA-R.S. 49:964(G):
The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses by first-hand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency's determination of credibility issues.
When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Maraist v. Alton Ochsner Medical Foundation, 2002-2677 (La. App. 1st Cir. 5/26/04), 879 So. 2d 815, 817. Once a final judgment is rendered by the district court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court's judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Maraist, 879 So. 2d at 817.

ASSIGNMENT OF ERROR NUMBER TWO
We must initially address DHH's second assignment of error, challenging the timeliness of the Davids' appeal of the denial of retroactive benefits. In this assignment, DHH contends the Davids erred in appealing from the September 9, 2003 letter setting forth Brandon's eligibility for benefits. Instead, DHH contends, the Davids' appeal was untimely because they should have filed a petition for judicial review or enforcement directed to the initial decision rendered by the Bureau of Appeals, dated August 28, 2003, which determined that Brandon's name had been wrongly removed from the waiting list and ordered that Capital immediately reinstate his name to the list and issue a slot to expeditiously determine his eligibility. After review of the record, we find no merit to this argument.
The record shows that counsel for the Davids indicated their intent to appeal the decision denying Brandon retroactive eligibility for cash-subsidy benefits by letters dated October 1, 2003 and October 17, 2003 written to Mr. I. D. Trent, Director of the Bureau of Appeals, on behalf of the Secretary of DHH. Mr. Trent responded to their request by letter that same month informing the Davids that their "request will be docketed as an appeal pursuant to appeal rights granted in the Cash Subsidy Rules." The matter was thereafter set and heard before the Bureau of Appeals over the course of a two-day hearing in which both sides participated and numerous witnesses were called to testify. Thus, on the record before us, the appeal was timely.[4]
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER ONE
In assignment of error number one, DHH contends that the Davids' request for retroactive benefits constituted a request for "damages," which the Bureau of Appeals is unauthorized to award. DHH contends that the cash-subsidy benefits requested for the years in question have been exhausted, as the benefits that the Davids allege they are entitled to were distributed years ago to qualified recipients. DHH further contends that the judgment should be set aside, as the funds cannot be retrieved from other recipients to pay the Davids. Additionally, DHH argues an administrative law judge does not have the authority to render a money judgment and to enforce the payment thereof.
The Davids counter that if DHEI's argument were accepted as correct, the Bureau of Appeals wasted several days in hearings and many hours in compiling a record that encompasses over eight volumes for a matter it had no authority to hear or act upon. The Davids further contend that DHH's argument that the Bureau of Appeals has no authority to grant retroactive benefits, yet does have the authority to deny retroactive benefits, is nonsensical and self-serving.
In support of DHH's argument that the Bureau of Appeals lacks the authority to render a money judgment, DHH cites Hawkins v. State, Department of Health and Hospitals, Office of Public Hospitals, 613 So. 2d 229 (La. App. 1st Cir. 1992). However, we find the underlying facts in Hawkins distinguishable from the facts of the instant case.
In Hawkins, a former employee of DHH filed suit in the district court seeking a judgment for unpaid wages pursuant to LSA-R.S. 23:631. After the district court awarded plaintiff judgment for past due wages, penalty wages, interest, and attorney's fees, DHH appealed, contending that the district court erred in hearing the matter as the State Civil Service Commission was vested with exclusive jurisdiction over matters relating to civil service employment pursuant to La. Const. art. X, § 10(A). Hawkins, 613 So. 2d at 231. On review, this court determined that plaintiff's cause of action for unpaid wages, penalty wages and attorney's fees did not arise until after her discharge, i.e., when she was no longer an employee of DHH. Further, the Commission was clearly without authority to render a money judgment and to enforce payment thereof as the dispute was not an employment-related matter made subject to the exclusive authority of the State Civil Service Commission. Hawkins, 613 So. 2d at 233-234.[5]
In the instant case, the Davids contend that the very essence of the hearing before the Bureau of Appeals was to determine, given the Bureau's previous decision and finding that Brandon's name had been wrongfully removed from the waiting list in 1998, whether he would have been eligible for benefits at the time his name approached the top of the waiting list in 1998, when he was wrongfully denied the opportunity to prove his qualifications. Moreover, it is undisputed that the Bureau of Appeals is statutorily authorized to review such eligibility determinations.[6]
Notably, at the hearing before the Bureau of Appeals, DIM failed to raise the defenses now raised on appeal, i.e., that there is no authorization to award retroactive benefits or that the rendition of such an award is in excess of the authority of the agency.
As the Davids correctly note, the Bureau of Appeals determined that Brandon failed to show that he would have been eligible for benefits in 1998. Presumably, if the Bureau of Appeals had instead determined that the evidence presented was sufficient to show that Brandon did meet the eligibility requirements in 1998, the Bureau of Appeals would have ordered that benefits be assigned accordingly. Thus, these arguments by DHH lack merit.
Further, considering the rules set forth in the Cash Subsidy Program Policies and Procedures Manual in effect at the time, and the Bureau's previous finding that Brandon's name had been erroneously removed from the waiting list by Capital, the Bureau of Appeals clearly had the authority (and was statutorily obligated) to determine whether Brandon met eligibility requirements in 1998. Moreover, on review, we reject DHH's contention that an assignment of cash-subsidy benefits pursuant to a finding of eligibility, by the district court, or for that matter, by the Bureau of Appeals or DHH, constitutes an award for "damages." Instead, we find the Bureau of Appeals was clearly authorized to review eligibility determinations for the program, particularly in light of the Bureau's prior ruling that Brandon's name had been wrongfully removed from the cash-subsidy waiting list.
This assignment also lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
DHH next contends that the district court erred in awarding the Davids partial retroactive benefits from 2000 to 2003. DHH contends that the district court's ruling is flawed in that there is no evidence to support the district court's assumptions that: (1) the Davids would have re-applied for cash-subsidy benefits if denied eligibility in 1998 when Brandon's name initially reached the top of the waiting list; (2) that if he had reapplied in 1998, his name would have reached the top of the waiting list after the effective date of the 2000 amendments; and (3) that Brandon would have then been determined eligible.
In reaching its decision, the record shows that the Bureau of Appeals reviewed the evidence and testimony presented and stated as follows in its oral reasons:
[T]he parents of Brandon David also chose to file the current appeal in which they asked that the agency look back in time, to November 1998, when Brandon David's name originally came up for consideration of eligibility on the Cash Subsidy Waiting List and was improperly removed from the list. In accordance with the appeal request and at the instruction of the undersigned Administrative Law Judge, the agency reviewed all available documentation in its records as well as all of the documentation submitted on appellant's behalf through his counsel in order to determine whether Brandon David would have been eligible for Cash Subsidy had his eligibility been considered in November 1998.
After a thorough review of all the documentation in Brandon David's Cash Subsidy records and the documents submitted on behalf of the appellant, the agency properly found that there was no acceptable documentation, within the meaning of the Cash Subsidy Rules in effect at that time, which was current within 1 year of November 1998. The appellant's attorney mentioned that the appellant's mother, Kimberly David, had copies of all of Brandon David's IEPs, but these IEPs were neither exchanged with counsel for the agency, submitted to the undersigned Administrative Law Judge, offered into evidence at the hearing nor proffered. There was no testimony at the hearing to the effect that an IEP for Brandon David issued within 1 year of November 1998 contained a qualifying exceptionality for the Cash Subsidy program. Thus, there is no acceptable documentation in evidence, current within 1 year of November 1998 which establishes that Brandon David would have been eligible for the Cash Subsidy program had he been considered in November 1998. The absence of this evidence ends the matter.
On appeal, the district court reversed the decision of the Bureau of Appeals, finding that the Bureau erred in denying the Davids retroactive benefits that they were clearly entitled to receive, i.e., from the time that the criteria was amended in 2000 to include Brandon's condition, through 2003.
After thorough review, we agree with the district court that the reasoning and decision of the Bureau of Appeals was flawed in that the basis for its determination of ineligibility in 1998 was that there was no "acceptable documentation of a qualifying exceptionality current within one year of the determination date of November 1998." The Bureau's decision failed to consider or acknowledge that had DHH not wrongfully eliminated Brandon's name from the waiting list when it reached the top in 1998, the Davids would have been informed that under the rules in place at that time, they could provide supporting documentation from a "licensed medical or mental health professional that a child meets the 1508 eligibility criteria for autism."[7]
Further, when Brandon was eventually screened in 2003, the Davids produced overwhelming documentation in support of their son's eligibility. In September of 2002, Dr. Michael David Chafetz, a clinical psychologist and neuropsychologist, evaluated Brandon at the request of the Davids, who were seeking to determine the nature and extent of Brandon's problems and to document whether he would qualify for benefits afforded by the program. Dr. Chafetz concluded his evaluation by stating that Brandon clearly meets the criteria for autism and that autism is present from birth. Thus, had the Davids been properly advised that Brandon's name had reached the top of the waiting list in 1998 and that they were entitled to provide supporting documentation of his diagnosis or condition, they could have submitted Brandon for the evaluation in 1998, which would have undisputedly revealed these same findings, given Brandon's autism and resulting disability.
The district court may reverse a decision of the Bureau of Appeals if the decision of the Bureau of Appeals is: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (6) not supported and sustainable by a preponderance of evidence as determined by the reviewing court. LSA-R.S. 49:964(G).
Contrary to its statutory obligation, here DHH failed to properly notify the Davids in 1998 that Brandon's name had reached the top of the waiting list and that they were entitled to present the necessary information to support his eligibility. Then, at the hearing in 2004, some six years later, the Bureau of Appeals rejected the claim on the basis of insufficient documentation in the records stating, "The absence of this evidence ends the matter." Clearly, DHH's wrongful removal of Brandon's name from the waiting list in 1998 and the failure of DHH to so inform the Davids deprived them of the opportunity to provide supporting documentation from a "licensed medical or mental health professional that a child meets the 1508 eligibility criteria for autism," and caused them substantial prejudice at the hearing in 2004 when their purported failure to produce this information in 1998 was used as a basis to deny benefits for which he was certainly eligible. Indeed, as the Davids note (and the record reflects), Brandon's autism was present from birth.
After thorough review, we agree with the district court that the decision of the Bureau of Appeals was arbitrary and capricious and founded upon improper procedure. We further find that the district court properly concluded, after its careful review, that based on the evidence in the record, Brandon would have been eligible for the subsidy under the criteria in place after 1508 was amended in 2000. Accordingly, we find no error in the judgment of the district court reversing the decision of the Bureau of Appeals.
This assignment of error also lacks merit.

CONCLUSION
Based on the above and foregoing reasons, the August 25, 2006 judgment of the district court is affirmed. Costs of this appeal in the amount of $5,477.00 are assessed against the defendant/appellant, the Louisiana Department of Health and Hospitals.
AFFIRMED.
NOTES
[1] This statutory mandate was based on the legislature's conclusion that services for persons with developmental disabilities should be responsive to the needs of the individual and his family, rather than fitting the person into existing programs, and that providing services to such adults and children while living in their own homes or with their families rather than in out-of-home placements was more cost effective.
[2] The exceptionalities listed above are as set forth in the Cash Subsidy Program Policies and Procedures Manual promulgated by DHH, OCDD, dated January 31, 2003.
[3] Capital Area Human Services District was created by LSA-R.S. 46:2661, et seq., to direct, through its board, the operation and management of such community-based programs and services relative to public health, mental health, and developmental disabilities for the parishes of Ascension, East Baton Rouge, East Feliciana, Iberville, Pointe Coupee, West Baton Rouge, and West Feliciana. See LSA-R.S. 46:2662.
[4] We further note that DHH failed to assert an objection or raise this issue before the Bureau of Appeals or the district court. Because appellate courts will not generally consider issues raised for the first time on appeal, which were not pleaded in the court below and which the court below has not addressed, we will not address the instant complaint by DHH on appeal. Geiger v. State ex rel. Department of Health and Hospitals, 2001-2206, p. 11 (La. 4/12/02), 815 So. 2d 80, 86.
[5] See also Akins v. Housing Authority of New Orleans, XXXX-XXXX (La. App. 4th Cir. 9/10/03), 856 So. 2d 1220, writ denied, 2003-2781 (La. 12/19/03), 861 So. 2d 574, which also distinguished Hawkins, and found that the Civil Service Commission had exclusive jurisdiction and authority to administer and regulate employment-related matters involving the calculation of past-due and future overtime wages, which included the authority to render a money judgment for past-due overtime wages, where the petition was sufficient to invoke the Civil Service Commission's exclusive jurisdiction.
[6] The authority of the Bureau of Appeals is set forth in LSA-R.S. 46:107 as follows:

A. (1) The Department of Social Services, and the Department of Health and Hospitals office of the secretary, through their respective appeal sections, shall provide for a system of hearings and is responsible for fulfillment of all hearing provisions as prescribed under Title I, IV-A, X, XIV, XVI, XIX, or XX of the Social Security Act and under Public Law 91-671 of the Food Stamp Act. Under these provisions, an opportunity for a hearing shall be granted at the state level to any applicant or recipient who makes a timely request for a hearing because his claim for assistance, services, or food stamps is denied or is not acted upon with reasonable promptness and to any recipient who is aggrieved by an agency action resulting in suspension, reduction, discontinuance, or termination of benefits.
(2) Under these provisions, an opportunity for a hearing shall also be granted at the state level by the Department of Social Services to any child placing agency or day care center, who is aggrieved by any agency action resulting in the denial, suspension, or revocation of a license.
(3) Under these provisions, an opportunity for a hearing shall also be granted at the state level by the Department of Health and Hospitals to any provider of services under the provisions of Titles XIX and )0(I of the Social Security Act who is aggrieved by an agency action resulting in the denial, suspension, or revocation of a license or the refusal to enter into, suspension of, or termination of a service agreement.
(4) All final decisions in cases of appeal are rendered by the office of the secretary at the state level and such decisions exhaust the claimant's administrative remedy.
B. The agency or its subordinate presiding officer conducting a proceeding authorized hereunder shall conduct such a proceeding and shall have such authority to administer oaths and affirmations, issue subpoenas, and to otherwise regulate the conduct of the proceeding as provided by law, or in the absence of such a law, as specified and authorized by R.S. 49:955 et seq. The deposit or payment of witness fees ordinarily required of a party who desires to subpoena a witness shall not be required if the party desiring the issuance of the subpoena is an indigent person. A person shall be presumed to be indigent if the person is certified for or is a recipient of any entitlement program, the eligibility for which is based on need, income, and or resources.
C. Within thirty days after mailing of notice of the final decision by the agency, or, if a rehearing is requested, within thirty days after the decision thereon, an applicant or recipient may obtain judicial review thereof by filing a petition for review of the decision in the Nineteenth Judicial District Court or the district court of the domicile of the applicant or recipient. When the petition is filed in an improper venue, the court of improper venue shall transfer the case to the district court of the domicile of the applicant or recipient or to the Nineteenth Judicial District Court.
D. Except as provided by Subsections B and C, all adjudicatory and review proceedings under this Section shall be governed by the Administrative Procedure Act.
[7] See Section V. A. 3. of the Cash Subsidy Program Policies and Procedures Manual issued May 6, 1998.