PETTIGREW, J.
|2The Louisiana State Board of Private Investigator Examiners (“LBPI” or “board”) appeals a June 16, 2016 district court judgment that granted Scott C. Frank’s (Frank) Application for Judicial Review of the board’s Adjudicative Decision, and reversed the revocation of Frank’s personal private investigator’s license and the license of Frank’s agency. After a de novo review of the entire record, including the proceedings before the LBPI, we find the license revocations were supported thereby and should have been affirmed by the district court. We reverse the decision of the district court and reinstate the board’s Adjudicative Decision.
PERTINENT FACTUAL HISTORY
At all times pertinent to this appeal, Frank, a private investigator, and his agency Scott Frank Investigations, held licenses issued by the board in 2007. In October or November 2008, Frank was hired by either Michael Landry (Landry) or his then eighteen-year-old adopted son, Christopher, to seek the identity of Christopher’s biological mother.[2] Christopher met Frank on October 15, 2008, to discuss the services to be rendered by Frank. Aso in October, Frank emailed, and Landry signed and emailed back, the contract for investigative services to be provided by Frank. A few days later, Landry also emailed Frank a copy of a letter from Christopher’s psychologist approving Christopher’s participation in the investigative search for his biological mother. In this email, Landry Instated that he would mail a check for Frank’s $2,500.00 retainer, which he did a few days later.[3]
*1249 On January 12, 2009, approximately three months after their first meeting, Christopher again met with Frank during which Frank shared with him the contents and status of his investigation. Frank revealed to Christopher that he had narrowed the list of the potential prospects to approximately four individuals; however, he did not reveal the identities of those four women to Christopher. Frank also informed Christopher that he could continue his investigation, but that, first, he would require the payment of an additional retainer. Christopher declined to pursue the search. According to Landry, Christopher had expressed to him that he was disappointed in Frank’s findings as he considered Frank’s narrowed list of four were “dead end” possibilities and he did not wish the investigation to continue.
Tragically, Christopher ended his own life on September 30, 2012. In the months that followed, Landry contemplated resuming a search for Christopher’s birth mother as well as the possibility of informing her of Christopher’s death. He testified that he ultimately decided to “take up where Christopher left off.” Landry initially contacted Catholic Social Services in Lafayette where Christopher had been adopted as an infant. Because the adoption had been a “closed adoption,” Catholic Charities was unable to provide Landry with any helpful information.
Landry then contacted Frank and stated that he wished to continue the search for Christopher’s biological mother that Frank had begun. Frank indicated that he had given 14 Christopher some of the items in his file and further informed Landry that as a general rule, all of his files are destroyed at the end of three years following the termination of the investigation. Frank told Landry that meant that the file had probably been destroyed and the investigation would have to “start over from scratch” and would require the payment to Frank of $5,000.00, as an additional retainer fee before beginning a new investigation.
Landry testified that he felt Frank’s inability to provide him with the file information created during Frank’s investigation for Christopher and for which Landry had paid $2,500.00, and Frank’s offer to “reopen” the investigation for an additional $5,000.00, was “inappropriate,” so he contacted the board seeking assistance. Landry ultimately lodged a complaint against Frank with the board. That complaint led to the administrative proceedings and decision of the board to revoke Frank’s licenses. Frank filed a petition for judicial review of the board’s decision in the Nineteenth Judicial District Court; the district court reversed that decision, and the board filed this appeal.
*1250 APPLICABLE LAW
The profession of private investigator, a field in which unqualified individuals may injure the public, has been deemed by the Legislature to require licensing and regulation. La. R.S. 37:3501. The Private Investigators Law (PIL) was enacted to require and develop qualifying criteria from applicants in an effort to promote the safety, health, and welfare of the people of Louisiana. La. R.S. 37:3501(B); La. R.S. 37:3502; see La. R.S. 37:3501, et seq. The PIL created the LBPI to examine and issue and regulate the licensure of qualifying applicants, to provide training, and to adopt rules and regulations to govern the practice of all licensed entities and individuals. La. R.S. 37:3504; 3505; 3507; 3509; 3515.
The following statutory provisions and rule and regulations are particularly relevant to the issues presented in this appeal. The causes for non-issuance, suspension, revocation, or restrictions; fines; reinstatement concerning private investigator licenses are provided in La. R.S. 37:3519, as follows:
A. The board may refuse to issue or may suspend, revoke, or impose probationary or other restrictions on any license issued under this Chapter for good cause shown which shall include the following:
Ib(1) Conviction of a felony or entry of a plea of guilty or nolo contendere to a felony charge under the laws of the United States or of any state.
(2) Deceit or perjury in obtaining any certificate or license issued under this Chapter.
(3) Providing false testimony before the board.
(4) Efforts to deceive or defraud the public.
(5) Professional incompetency or gross negligence.
(6) Rendering, submitting, subscribing, or verifying false, deceptive, misleading, or unfounded opinions or reports.
(7) The refusal of the licensing authority of another state to issue or renew a license, permit, or certificate to practice in that state, or the revocation of, suspension of, or other restriction imposed on a license, permit, or certificate issued by such licensing authority.
(8) Aiding or abetting a person to evade the provisions of this Chapter or knowingly combining or conspiring with an unlicensed person, or acting as an agent, partner, associate, or otherwise, of an unlicensed person with intent to evade provisions of this Chapter.
(9) Violation of any provision of this Chapter or any rules or regulations of the board or rules of professional conduct promulgated by the board.
Additionally, La. R.S. 37:3520, declares as illegal the following acts by private investigators:
A. It shall be unlawful for any person knowingly to commit any of the following acts:
(1) Provide contract or private investigator service without possessing a valid license.
(2) Employ an individual to perform the duties of a private investigator who is not the holder of a valid registration card.
(3) Designate an individual as other than a private investigator to circumvent the requirements of this Chapter.
(4) Knowingly make any false statement or material omission in any application filed with the board.
(5) Falsely represent that a person is the holder of a valid license or registration.
(6) Violate any provision of this Chapter or any rule or regulation of the board.
*1251 B. It shall be unlawful for any private investigator knowingly to commit any of the following:
|fi(l) Make any statement which would reasonably cause another person to believe that the private investigator functions as a sworn peace officer or other official of the state or of any of its political subdivisions, or an agency of the federal government.
(2) Fail to comply with the regulations issued by the board, or with any other requirements under the provisions of this Chapter.
(3) Divulge to anyone, other than his employer, or to such persons as his employer may direct, or as may be required by law, any information acquired during such employment that may compromise the employer or assignment to which he has been assigned by such employer.
(4) Possess a license or registration card issued to another person.
Whoever willfully violates any provisions of the law, shall be fined not less than two thousand dollars nor more than ten thousand dollars, or imprisoned not less than three months nor more than one year, or both. La. R.S. 37:3521(B).
Finally, the following rules and regulations promulgated by the board are also applicable herein:
LAC 46:LVIL111 Complaints
A. Any complaint to the board must be in writing, signed by the individual making said complaint, and include an appropriate means by which to contact said individual for investigative purposes.
LAC 46:LVII707 Communication
A. An investigator shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests] for information.
B. The investigator shall give the client sufficient information to participate intelligently in decisions concerning the objectives or the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so.
LAC 46:LVII.725 Professional ■ Misconduct
A. It is professional misconduct for an investigator to:
1. violate or attempt to violate the rules of professional conduct or to knowingly assist or induce another to do so, or do so through the acts of another;
2. commit a criminal act or any other act that reflects adversely on the investigator’s honesty, trustworthiness, or fitness as an investigator in other respects;
3. engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation.
^ADMINISTRATIVE PROCEDURAL HISTORY
As noted earlier herein, Frank and his agency were providing private investigative services under valid licenses originally issued in 2007. In letters to Frank and his counsel of record, dated December 19, 2013, the board advised that allegations of professional misconduct had been asserted against Frank and that the board would be holding an adjudicatory hearing, pursuant to La. R.S. 37:3500-3525 and the rules and regulations adopted by the board pursuant to La. R.S. 49:950, the Administrative Procedure Act, to determine the validity of those allegations and determine if they include possible statutory and rule violations by Frank.
The facts underlying those allegations and the particular violations alleged were specified in the Administrative Complaint attached to those letters. The letter stated *1252 that Frank’s conduct, as alleged, would constitute cause for which the board may order a suspension or revocation of his and his agency’s licenses if proven. Those violations were listed as follows:
a) La. R.S. 37:3519(A)(4): Efforts to deceive or defraud the public.
b) La. R.S. 37:3519(A)(5): Professional incompetency or gross negligence.
c) La. R.S. 37:3519(A)(6): Rendering, submitting, subscribing, or verifying false, deceptive, misleading, unfounded opinions or reports.
d) La. R.S. 37:3519(A)(9): Violation of any provision of this Chapter or any rules and regulations of the board or rules of professional conduct promulgated by the board.
e) La. R.S. 37:3520(B)(2): Failure] to comply with regulations issued by the board, or with any other requirements under the provisions of the Chapter.
f) Failure to keep a client reasonably informed about the status of a matter and promptly comply with a reasonable request for information in violation of § 705(A) of the Board’s Rules and Regulations.
g) Committing a criminal act or any other act that reflects adversely on the investigator’s honesty, trustworthiness[,] or fitness as an investigator in other respects in violation of § 725(2) of the Board’s Rules and Regulations!)]
h) By engaging in conduct involving dishonesty, fraud, deceit[,] or misrepresentation in violation of § 725(3) of the Board’s Rules and Regulations.
It appears from the record that Frank did not file a response to the Administrative Complaint. An adjudicatory hearing was held on March 18, 2014, and resumed on August 27, 2014, during which witnesses were called to testify and evidence was presented. The record reveals that Frank and his counsel attended the hearing on March 18, but neither |8of them attended the resumed meeting on August 27. The record also indicates that Frank voluntarily relinquished his license to the board on August 25, two days prior to the continuation of the hearing.
Following the continued hearing, on November 18, 2014, LBPI issued an opinion and order signed on its behalf by Glen Peterson, the presiding officer of the hearing panel. The board found as a matter of fact that a contract for services existed between Frank and Landry and that Landry was the client. The board found further that Frank failed to communicate with Landry regarding the investigative process; Frank failed to produce the investigative file regarding Christopher’s birth mother when requested by Landry in December 2012; Frank still possessed the file at the time that request was made; and, it was within Frank’s ability to find the file and produce it to Landry when requested.
The LBPI also found, as conclusions of law, that an individual or agency licensee: (1) that fails to produce records to a client of their investigation despite retaining them, demonstrates an effort to deceive the public in violation of La. R.S. 37:3519(A)(4); (2) that fails to communicate with their client after retaining services and receiving a fee, demonstrates professional incompetency in violation of La. R.S. 37:3519(A)(5); (3) that informs a client that he did not retain a record of the investigation, but can then produce it years later, demonstrates rendering false reports in violation of La. R.S. 37:3519(A)(6); (4) that fails to maintain a competent professional relationship with a client, demonstrates a violation of the rules of professional conduct and La. R.S. 37:3519(A)(9); (5) professional incom *1253 petence and gross negligence constitute “good cause” as required for the board to have the authority to suspend, revoke, or impose probationary or other restrictions on a license issued by the board, pursuant to La. R.S. 3519(A)(5); (6) that fails to acknowledge an individual, who paid the retainer fee for private investigative services and signed a private investigation contract as the client, demonstrates a failure to comply with the rules and regulations issued by the board in violation of La. R.S. 37:3520(B)(2); (7) fails to keep a client reasonably informed about the status of a matter and fails to promptly comply with a reasonable request for information, demonstrates a Rfailure to act with reasonable diligence and promptness in representing a client in violation of LAC 46:LVII.705(A); (8) that misinforms a client that the investigative report no longer exists reflects adversely on the investigator’s honesty and fitness as an investigator, demonstrates professional misconduct pursuant to LAC 46:LVII.725(2); and (9) that informs a client that the record of the investigation was turned over to his son, Christopher Landry, and not retained by the individual licensee or agency licensee, demonstrates professional misconduct, a violation of LAC 46:LVII.725(3).
Finally, the board noted that although Frank surrendered his agency and individual licenses to the board prior to the second day of the hearing, it was choosing to take action against Frank, who was licensed by the board at the time the violations occurred. The board ordered Frank’s individual and agency licenses revoked; and ordered Frank to pay a $5,000.00 fine, $2,500.00 in restitution; and the costs of the proceedings in the amount of $14,329.52. The board further ordered Frank to pay the total amount, $21,829.52, within two years from November 18, 2014, the date the order was signed.
Frank filed an application for judicial review of the board’s decision with the Nineteenth Judicial District Court on December 22, .2014. A hearing was held on September 28, 2015. Prior to a judgment being rendered, the parties entered into a joint stipulation that amended the board’s order, making the fines and costs of the judgment a condition to Frank seeking reinstatement of the license(s) revoked by the order.
On June 10, 2016, the district court rendered the judgment that is before us on appeal, reversing the decision and order of the board. That judgment is based on a May 10, 2016 minute entry filed into the district court record stating the board had no authority to revoke the licenses of Frank and his agency inasmuch as “they were only required to keep copies of the investigative file for a period of three years.” The court also found that the last contact between Frank and Christopher was on January 12, 2009, and thus, more than three years had passed, following which Frank was no longer required to keep his investigative file. On that basis, the decision of the board was reversed. This appeal by the board followed.
I ASSIGNMENT OF ERROR/ANALYSIS AND DISCUSSION
The board argues in a sole assignment of error that the district court’s finding— that the board lacked authority to revoke Frank’s licenses—and its subsequent decision to reverse the decision of the board have no basis in law and must be reversed. The board maintains that its adjudicatory decision against Frank was based on numerous findings of violations by Frank of statutory provisions and the board’s own rules and regulations that were supported by the evidence presented to the board, and had nothing to do with the rule, or *1254 absence thereof, designed to preserve a file for a particular length of time. For the following reasons, we agree.
There is no provision, statutory or otherwise, that addresses the client files of a private investigator. Thus, the district court’s finding that Frank was mandated by law to keep the investigation file in this matter for a period of three years is not supported by law, and renders erroneous the court’s decision that the board lacked the authority to revoke Frank’s licenses. Although the law and regulations are silent as to a private investigator’s files, the board, pursuant to its authority granted by La. R.S. 37:3505(3) promulgated Rule 717 in LAC 46:LVII, Chapter 7. Rule 717 governs a private investigator’s contracts for professional services rendered and provides a list of the information that is required to be part of those contracts, including names and addresses of the parties, the schedule of fees to be charged, the purpose and scope of the investigation, the signatures of the client and two witnesses, and the date the agreement was signed. The last item on the list provides that contracts shall be made in duplicate, one copy for the client and “one copy shall be retained in the investigative case file for a period of three years.”
The district court’s ruling is a usurpation of the statutory authority granted to the board. The judgment impermissibly creates a three year prescriptive period (effectively limiting a private investigator’s potential liability) in an area of the private investigation profession (the retention of investigative files) that was neither imposed by statute nor by the board under its rule-making authority. For this reason, the district court’s judgment must be reversed.
\„DE NOVO REVIEW
When reviewing an administrative final decision in an adjudication proceeding, the district court functions as an appellate court. Once a final judgment is rendered by the district court, an aggrieved party may seek review of same by appeal to the appropriate appellate court. On review of the district court’s judgment, no deference is owed by the court of appeal to factual findings or legal conclusions of the district court, just as no deference is owed by the Louisiana Supreme Court to factual findings or legal conclusions of the court of appeal. Maraist v. Alton Ochsner Medical Foundation, 2002-2677 (La.App. 1 Cir. 5/26/04), 879 So.2d 815, 817. Accordingly, we review the matter de novo. In performing judicial review of the board’s adjudication, we are guided by La. R.S. 49:964, in pertinent part, as follows:
G. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(6) Not supported and sustainable by a preponderance of evidence as determined by the reviewing court. In the application of this rule, the court shall make its own determination and conclusions of fact by a preponderance of evidence based upon its own evaluation of the record reviewed in its entirety upon judicial review. In the application of the rule, where the agency has the opportunity to judge the credibility of witnesses *1255 by first-hand observation of demeanor on the •witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.
We have reviewed the record in its entirety, including the transcripts of the adjudicatory hearings by the board, and find that the revocation of Frank’s licenses was based on findings that Frank was in violation of numerous statutes and regulations, none of which were reviewed by the district court. Further, our review of the record reveals ample evidence supporting the revocation of Frank’s licenses.
| ^Initially, Frank’s testimony was notably difficult to elicit. As to most of the significant and material facts, Frank was unable to recall and did not answer the majority of questions. As to the evidence Frank was able to recall, his answers and testimony were inconsistent with either his own actions (see n.2, supra), his own contradictory or illogical testimony, or the documentary evidence together with the testimony of other witnesses (see n.3, supra.) This level of uncooperativeness in the giving of testimony and providing necessary information creates a serious and legitimate doubt regarding Frank’s credibility both in these proceedings and in conducting himself throughout the matter at issue. Initially we note Frank never affirmatively stated or recalled destroying the specific file at issue. First, his testimony established simply that because he was only required to keep the file for three years, albeit erroneous, he assumed that it had been destroyed. He did not provide any specifics regarding the actual destruction of the file, or of a set procedure by which he conducts such destruction of files after the three year period. Later, he represented, for the first time, that he had given the file materials to Christopher to make copies thereof, and that Christopher failed to return it. Finally, while he was able to provide some of the file’s contents by resorting to earlier emails, he was unable to explain why he was only able to access, some, but not all of the email attachments.
As noted earlier, the adjudicatory hearing was held on two separate days—March 18, 2014 and August 27, 2014. Although Frank and his counsel were present at the hearing on March 18, neither of them, despite having received notice thereof, was present for the second day of the hearing on August 27. However, on August 25, two days prior to the continuation of the hearing, Frank, by letter hand-delivered and sent by certified mail, informed the board that effective immediately (the date of the letter) he was ceasing to do business individually and as an investigations agency. He wrote that he was unable physically to surrender his current license, as he no longer had it, but also explained that his license was set to expire on November 20, 2014, and that he had not applied for a renewal thereof. In that letter, Frank made no mention of the ongoing adjudicatory hearing at which revocation of said licenses was being considered. We find the timing of the “voluntary” ceasing to do business and non-renewal of the licenses by | iaFrank, being that it fell during the pendency of the adjudicatory hearing considering revocation, together with Frank and his counsel being absent from the second day of the hearing, suspect. The letter casts doubt as to Frank’s intentions by ceasing to provide services when his licenses to do so validly was in the process of being adjudicated. Moreover, Frank’s absence at the continued hearing additionally reflects Frank’s persistent refusal to cooperate with the board in obtaining the truth regarding the allegations of wrongdoing by Frank being considered by the board.
Moreover, we find the record overwhelmingly reflects a level of incom *1256 petence and dishonesty in violation of law and sanctionable pursuant to the board’s authority. The record evidencing Frank’s almost complete lack of recall, not only of specifics regarding this particular matter, but also about his general mode of investigations, is also significant. We need not determine whether Frank was being intentionally dishonest. Either he was untruthful, which is actionable in and of itself, or he was not dishonest, in which case that same evidence establishes an unacceptable and actionable level of incompetence. From the very inception, of his testimony, Frank displayed an immediate lack of recall. He maintained from the start that he was not obligated to keep the file for longer than three years, and that, therefore, the file must have been destroyed. He could not, however, recall when, how, or any other specifics regarding said destruction of the file. After being unable to explain why he could not “re-create” the information in the file by referring back to computer activity in connection therewith, such as letters he may have written in an effort to find the identity of Christopher’s birth mother, Frank finally admitted that such work would have been done on a computer. However, he quickly added (referring to the computer), “Oh, that thing is gone.” In further responding to questions, Frank stated that he had “destroyed” all of his computers; however, he was unable to recall whether he attempted to save any of the data on those computers, how, where, or why the computers were destroyed, or where, if anywhere, the data hád been saved. At this point in time, the testimony that revealed Frank had no knowledge regarding any of the data that was destroyed in conjunction with the destruction of his computers prompted one of the board members (a Mr. Landry) to remark:
114I’m just asking my own question as a board member here and as a private investigator who operates an agency. I just find it, personally, in my opinion, appalling that somebody who has an investigative agency and allows their investigative files and, more so, their actual contract with the client, no matter who the client was, that you don’t retain that for your records....
That same board member noted on the record that Frank’s recollection was very “selective” and that everything he (the board member) had heard at the hearing reflected “incompetence.” We too, find much of the evidence regarding Frank’s general practice and procedure for performing investigations and dealing with clients appalling, particularly given that the nature of the profession centers around the collection and keeping of factual evidence. When the questioning of Frank failed to reveal any recollection of the specifics regarding the matter at issue and also revealed an apparent lack of diligence in retaining investigative information, the board members took to questioning Frank about his practice in general. Again, Frank was unable to answer questions. For example, he was asked roughly how many adoption cases he had worked on prior to the one at issue. Frank answered “I don’t recall” to questions referring to adoption cases he handled ten times in two pages of the transcript.
Frank was also questioned about the particular steps that he took in this particular investigation to acquire the information that he was able to narrow to four potential prospects. Again, Frank could remember nothing, explaining that he could not do so “without the file.” When asked, what steps, in general, he would take to begin an investigation, he was again, unable to answer satisfactorily. He finally responded that he performs “skip tracing”, but when asked which ones, his response was simply “different ones, several different ones.” When asked what he did in attempts to locate Christopher’s biological mother, he responded “[tjhrough research.” Pressed further, to answer that *1257 question in the general sense, he stated he would normally first contact the adoption agency. When asked what happened next, he was unable to respond. Then, he stated that he took a lot of the information from adoption papers provided to him by Christopher, the purported client. Questioned even further, he finally responded that he did research on “numerous of (sic) websites and databases,” but he was unable to provide or recall |lswhat information, if any, was gleaned from these numerous resources. Instead, he continuously explained that he could not answer without having the file in front of him. Thus, he could not answer how many people he spoke with during the investigation, how many hours he put into the investigation, or whether or not he contacted any public agencies or looked in any public records. When questioned what public agencies he generally contacted when investigating adoptions, he responded, “I would go online and find out what public agencies there were.” He could not name any of the agencies off the top of his head.
The foregoing references to the transcript and evidence presented are illustrative only. The transcript as a whole fully supports a finding by the board that Frank’s conduct and behavior in conducting the investigation at issue and communicating with his clients was violative of at least one (incompetence) if not, several other standards impbsed upon him by law. In any event, the revocation of Frank’s licenses was not arbitrary or capricious or characterized by an abuse of discretion (La. R.S. 49:964(G)(5)), and it was supported and sustainable by a preponderance of the evidence in the record (La. R.S. 49:964(G)(6)).
CONCLUSION
For all of the foregoing reasons, we reverse the June 10, 2016 judgment of the district court that reversed the findings of the board and the revocation of Frank’s licenses. Further, we hereby reinstate the opinion and order of the board, dated November 18, 2014, revoking said licenses based on numerous violations by Frank of statutory and regulatory provisions.[4] All costs of this appeal are assessed to Scott C. Frank.
DISTRICT COURT JUDGMENT DATED JUNE 10, 2016, REVERSED; LOUISIANA STATE BOARD OF PRIVATE INVESTIGATOR EXAMINERS OPINION AND ORDER DATED NOVEMBER 18, 2014, REVOKING THE LICENSES OF SCOTT C. FRANK AND SCOTT FRANK INVESTIGATIONS, REINSTATED.

. The parties dispute whether Landry or Christopher was the actual "client” for purposes of the contract for investigative services entered into with Frank, For the reasons further expounded in this opinion, we find that factual determination unnecessary for the ultimate resolution of the issues presented in this appeal. We note, however, that Frank takes incompatible positions with regard to this issue. Throughout this litigation, Frank has maintained that Christopher, not Landry, was his client. He bolsters that position by pointing out that the adoption proceeding had been a closed one in which the adopting parents have no rights to obtain otherwise confidential information regarding the adoption. However, in addition to establishing that the $2,500.00 retained for Frank's services was paid by Landry, and received by Frank, the record reveals that Frank did not raise this issue when he was contacted by Landry following Christopher’s death in September 2012. In fact, because he claimed to have destroyed the investigative file, he offered to begin a new investigation from scratch, for Landry but would need an additional $5,000.00 retainer fee. Finally, Frank "did not recall” and was unable to explain a contract for his professional services introduced into evidence by Landry, which had been emailed by Frank to Landry, and signed and returned by Landry. Although resolving who the “client” was is unnecessary to our ultimate finding in this decision, we find Frank's inap-posite position on this fact supportive of the lack of Frank’s credibility, which forms one of the bases for our ultimate conclusion herein.

.Frank initially denied having a copy of the contract; however, Landry introduced into evidence a copy of a contract for Frank’s professional services that he had signed and *1249 then returned to Frank. Landry also produced the email to which Frank attached and sent the contract, asking him to sign and giving information about where Landry should remit his payment of the retainer fee. Frank testified he did not recall possessing any such contract. In a letter written by Frank’s counsel in response to the preliminary complaint notification sent to Frank by the board, Frank asserts that Christopher signed a contract with him and paid him a retainer during their first meeting in October 2008, but Frank did not offer proof of any documentary proof of either. (He attached to the letter an unsigned "form" of a contract allegedly signed by Christopher that varies greatly from the contract produced by Landry.) Additionally, at the adjudicatory hearing, Frank introduced into evidence the letter from Christopher’s psychologist, but could not answer why he was able to access and produce the letter attachment to the email, but was unable to produce the contract, which he represented must have been destroyed with the rest of the file after the passage of three years. Again, while resolution of the contract issue is not necessary to our decision in this matter, this evidence is supportive of that decision insofar as it raises doubt as to Frank’s credibility and/or competence.

. We note that our reinstatement encompasses the amendments to the board’s opinion and order that were affected by the joint stipulation entered into the record concerning the fines imposed and attorney fees awarded, providing that those fines and award become payable only, and if and when Frank proceeds with attempts to reinstate or reapply for a license.